STATE OF IOWA ex rel. JOHN H. MITCHELL, Attorney General, Appellee, v. THOMPSON'S SCHOOL OF BEAUTY CULTURE, Appellants.

No. 44480.

John H. Mitchell, Attorney General, and Don W. Burington, Asst. Attorney General, for appellee.

Ralph N. Lynch, Comfort & Comfort. and Edward Robinson, for appellants.

Miller, J.—The appellants are the proprietors of various schools of cosmetology. While other issues are presented by the pleadings, at the trial, the issues were narrowed by stipulation to the question whether or not a school of cosmetology, that holds itself out as charging for students' work, is engaged in the practice of cosmetology contrary to law.

The record shows that appellants, in the operation of their schools of cosmetology, do hold out to the public that work is done by students and that certain charges are made therefor. The evidence shows that it is not possible to furnish an adequate course of instruction in cosmetology unless the student is given practical work. The evidence also shows that the application of facial massage, marcels, permanent waves, etc., to a patron should be done only at stated intervals, otherwise the effect would be harmful to the patron. Because of this feature, the students cannot get sufficient practical experience if they are limited to working upon each other.

The attorney general and the trial court do not challenge this issue of fact, but proceed on the theory that a violation. of law arises only when a charge is made for students' work. It was the position of the trial court, and is the position of the attorney general in this court, that the students might do necessary practical work upon patrons from the public, under the supervision of their instructors, who are licensed cosmetologists, provided that no charge is made for such services.

Appellants contend that if the students are required to render such services gratuitously, the existence of any school of cosmetology in this state is seriously jeopardized, if not made

impossible. The record shows that approximately 50 per cent of the gross income of appellants is derived from the tuition fees charged the students and the balance of their income appears to be derived from the charges made to the public for the work of the students. The record also tends to show that the expense of operation is approximately 90 per cent of the gross income, from which it is apparent that, if the students are compelled to do such work gratuitously, the tuition would be increased approximately 100 per cent before appellants would be able to continue to operate their schools. Appellants contend that such rates of tuition would force the students to attend schools in other states.

The determinative issue of this controversy is presented by the claims of appellants that the statute, insofar as it compels the students to render such work gratuitously, is unconstitutional. Appellants assert that the statute violates sections 1 and 9 of Article I of the Constitution of this State, as well as section 10 of Article I and the 14th Amendment to the Constitution of the United States.

The chapter of the Code involved herein is chapter 124-B1. Section 2585-b1 defines the classes of persons deemed to be engaged in the practice of cosmetology. This statute clearly includes the students engaged at appellants' schools under the circumstances shown by the record herein.[1]

---

Note 1. "2585-b1. Definitions. For the purpose of this chapter the following classes of persons shall be deemed to be engaged in the practice of cosmetology:

"1. Persons who, for compensation, engage in or who hold themselves out to the public as being engaged in any one or any combination of the following practices: cutting, dressing, curling, waving, bleaching, coloring and similar work, on the hair of any woman or child by any means whatever.

"2. Persons who, with hands or mechanical or electrical apparatus or appliances, or by the use of cosmetic preparations, antiseptics, tonics, lotions, or creams, engage for compensation in any one or any combination of the following practices: massaging, cleansing, stimulating, manipulating, exercising, manicuring, beautifying, or similar work, the scalp, face, neck, hands, arms, bust or upper part of the body, or the removing of superfluous hair by the use of electricity or otherwise, on or about the body of any woman or child."

Section 2585-b2 sets forth the exceptions to the preceding section, which exceptions do not eliminate appellants' students from the definition set forth in section 2585-b1.[2]

Section 2585-c12 provides that appellants shall not use "any person as a practitioner of cosmetology unless such person is a licensed cosmetologist, or an apprentice as defined by this act." Section 2585-b3 provides that an applicant for a license to practice cosmetology shall pass a physical examination and also an examination prescribed by the cosmetology examiners. Section 2585-b4 provides that no person shall be eligible to take the examination prescribed by the examiners unless he presents a diploma issued by a school of cosmetology approved by the examiners and licensed by the department. Obviously, appellants' students cannot qualify for a license to practice cosmetology until they have completed their course of study and received diplomas.

Section 2585-c10 defines an apprentice as one who has obtained a diploma from an approved school of cosmetology, has made application to take the examination and has been issued a temporary license to work as an operator from the date of his graduation to the date of the next examination. Accordingly, appellants' students do not qualify as apprentices.

It is apparent that if chapter 124-B1 is to be applied to appellants, they cannot use their students to do the class of work, falling within the provisions of section 2585-b1, upon members of the public and make a charge for such services. The trial court enjoined appellants from so doing and held that to give such effect to the statute is within the provisions of the constitution. We hold that this was error.

---

Note 2. "2585-b2. Exceptions. Section 2585-b1 shall not be construed to include the following classes of persons:

"1. Licensed physicians, surgeons, osteopaths, nurses, dentists, podiatrists, optometrists and chiropractors when exclusively engaged in the practice of their respective professions.

"2. Barbers who do not practice cosmetology upon women or children in connection with their regular trade or profession; and nothing in this chapter shall be construed to prohibit barbers from cutting the hair, massaging the face and neck, or shampooing the head of any person.

"3. Those who render like services in cases of emergency or occasionally administer same in the home."

Chapter 124-B1 of the Code provides for schools, such as operated by appellants. The purpose of these schools is to equip students for the taking of examinations for licenses as cosmetologists. Under the record herein, an adequate course of study cannot be given without including therein practical experience. The statute intends that the students shall be afforded such practical experience, as a part of the training in appellants' schools. While this is not as apparent as it might well be, analogous statutes would seem to demonstrate that such must have been the intention of the legislature.

Chapter 121 of the Code provides for the regulation of the practice of dentistry. It is obvious that dental students should be afforded practical experience as a part of their work. Specific provision is made therefor by section 2566 of the Code, which provides that the definition of persons engaged in dentistry shall not include students who practice dentistry upon patients at clinics in connection with their regular course of instruction at the state dental college.

Chapter 124-B2 of the Code sets forth the regulations of barbering. Students of barbering obviously should have practical experience. It is specifically provided for by section 2585-b12, which provides that the definition of the practice of barbering shall not include apprentices who are in good faith pursuing the study of barbering under the direct supervision and tutelage of a licensed practitioner.

Chapter 124-C1 provides for the regulation of the practice of embalming. It is obvious that a student of embalming should have practical experience. It is specifically provided for in paragraph 3 of section 2585-c3, which provides that no applicant for examination shall be issued a license unless such applicant shall, during his studentship, arterially embalm not less than 25 human bodies under the direct supervision of a licensed embalmer.

Chapter 120 of the Code provides for the regulation of the practice of nursing, and makes provision that applicants for a license receive proper experience in practical nursing.

By reason of the foregoing, it seems readily apparent that the legislature must have contemplated that the students of cosmetology should be afforded an opportunity for practical training in their course of study. Under the record herein, the practical work done by students in appellants' schools is under

the supervision of instructors who are licensed cosmetologists. The only complaint is that, in affording such practical experience, appellants are violating the law when they make a charge to the members of the public for the services of the students. Accordingly, we are confronted with but one question, namely, whether the legislature of Iowa, in exercising its police power to regulate the practice of cosmetology, may so frame the statute as to require the operators of schools of cosmetology to compel their students to render gratuitous services to the public, when they undertake to secure practical experience while working under the supervision of a licensed cosmetologist. We hold that such a requirement of the statute would violate the constitution and would be an improper exercise of the police power.

The limitations upon the legislature, in the exercise of the police power, appear to be well stated in the case of Baker v. Daly, D. C., 15 F. 2d 881, 882, which held that the Oregon statute, regulating cosmetology, was unconstitutional. In the court's opinion, the court refers to certain rights guaranteed by the constitution, and the police power of the state to interfere with such rights, by the following language:

''The right thus granted is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals; but, to justify a state in exercising such authority, it must appear that the interest of the public require such interposition, and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive to individuals. 'The Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose undue and unnecessary restrictions upon lawful occupations'. Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385.''

A situation, somewhat analogous to that presented herein, arose in Missouri, when the court, in the case of Moler v. Whisman, 243 Mo. 571, 582, 147 S. W. 985, 988, 40 L. R. A. (N. S.) 629, Ann. Cas. 1913 D, 392, construed a statute regulating barbering, which provided that barber students should be required to render gratuitous services, while gaining practical experience preparatory to taking the examination for a license. The court held the statute unconstitutional and states:

"The practice of boys or young men apprenticing themselves to skilful mechanics, artisans or professional men in order to qualify themselves for useful trades and professions is almost as old as civilization itself; but the barbers' law is the first regulation which has ever come to our knowledge that prohibits both the apprentice and his master from receiving any remuneration whatever for services of the apprentice, thereby compelling the apprentice to waste two years of his time while qualifying for a public barber. * * *

"The learned attorney for defendants has not assigned any reason or called our attention to any fact even remotely indicating that the public health will be promoted, protected or safeguarded by requiring students of the barber's trade to work for two years without compensation. On the contrary, the simplest application of the laws of reason and common sense, demonstrates that an apprentice who receives compensation for his toil will take a deeper interest in his work and learn more thoroughly those things which he needs to know about preventing the spread of disease than if he be required to work without pay; hence, that part of the law under consideration cannot be even said to tend to promote the public health, which is the pretended purpose for which it was enacted."

This court, in the case of Duncan v. City of Des Moines, 222 Iowa 218, 223, 268 N. W. 547, held that an act, fixing minimum prices which might be charged for barbering services, was unconstitutional in violation of sections 1 and 9 of Article I of our Constitution. The Florida court in the case of State v. Ives, 123 Fla. 401, 167 So. 394, also held that barber prices could not be regulated by the legislature.

A question which would seem to be directly analogous to the question here presented to us was passed upon by a three judge federal court in the District of North Dakota in the case of Schum et al., v. Alexander et al., decided October 27, 1937, and not officially reported. In that case, the constitutionality of the North Dakota cosmetology statute was challenged because of a provision that no school should make any charge for services or material for work done by a student "except the actual cost of the material used." The court held such provision unconstitutional. After quoting the provision of the law, the court states its conclusion as follows:

"That said portion of said law hereinbefore in Paragraph Two of these Conclusions quoted, cannot be sustained as a constitutional enactment on the ground that said enactment is an exercise of the police power of the State in the interest of public health, morals or public safety. That the enactment referred to has no real or substantial relation to those objects or either of them, that there is no such relationship between the charges made or to be made by schools for services to the public and the public health, morals and safety, as to lay a constitutional foundation for said enactment, as an exercise of the police power of the State, and that said enactment is an invasion of the rights of the complainants secured by the Fourteenth Amendment, U. S. C. A. Const., and such portion of said Act hereinbefore quoted, and the rules, regulations and promulgations of the defendants thereunder are void."

Under the issues here presented, we are not concerned with the constitutionality of chapter 124-B1 of the Code in any other particular than the specific question whether appellants, in the operation of their schools, may charge for work done by students acting under the supervision of licensed cosmetologists. This is the only issue before us and it is the only issue we undertake to decide. We hold that to require that the work of such students be rendered gratuitously would be an arbitrary interference with private business and the right to contract guaranteed by section 1 of Article I of the Constitution and would impose undue and unnecessary restrictions upon lawful occupations in violation of section 9 of Article I of the Constitution. Accordingly, the statute cannot apply to appellants' schools. The trial court erred in refusing to so hold. The injunction ordered by the decree of the trial court is erroneous.

. The decree of the trial court must be and it is reversed.— Reversed.

MITCHELL, C. J., and STIGER, HALE, OLIVER, BLISS, HAMILTON, and RICHARDS, JJ., concur.