TOEBE ACADEMY OF BEAUTY CULTURE, Appellant, vs. KELLY and others (STATE BOARD OF HEALTH), Respondents.

*October 10—November 4, 1941.*

104

The cause was submitted for the appellant on the brief of *M. M. Morrissey,* attorney, and *L. A. Squire* of counsel, both of Madison, and for the respondents on that of the *Attorney General* and *William A. Platz,* assistant attorney general.

Rosenberry, C. J.   The first question for determination is, What was before the trial court under the pleadings in this case?   In its brief in this court the plaintiff alleges that because no general appeal provision is contained in ch. 159, Stats. 1939, entitled "Beauty Parlors," nor any specific

method of review provided by said chapter, that none exists. The trial court was of the view that the provision contained in sec. 160.22, Stats., applies to all proceedings before the State Board of Health.

The contention of counsel is that sec. 160.22, Stats., applies only to orders made pursuant to secs. 160.15 to 160.23. That contention must be sustained. At most it could apply to anything contained in ch. 160, Stats. In *State ex rel. Oaks v. Brown* (1933), 211 Wis. 571, 249 N. W. 50, a provision contained in one chapter was applied to all the chapters in that "Title," but in that case the statute expressly so provided.

Title XV of the statutes bears the heading "Public Health." Ch. 159, Stats., is a part of title XV. The State Board of Health is created by ch. 140, Stats., also a part of title XV. Sec. 140.05, Stats., prescribes the powers and duties of the State Board of Health. Sec. 140.05 (3) provides:

"The board shall have power to make and enforce such rules, regulations and orders governing the duties of all health officers and health boards, and as to any subject matter under its supervision, as shall be necessary to efficient administration and to protect health, and violation shall be punished by fine of not less than ten nor more than one hundred dollars for each offense, unless penalty be specially provided. The rules and regulations shall bear the seal of the board, be attested by the state health officer, and be published in the official state paper and distributed in pamphlet or leaf form to all health officers and any citizen asking for the same. They shall not be effective until thirty days after publication. *All rules and regulations so adopted and published and all orders issued by the board in conformity with law shall be valid and in force, and prima facie reasonable and lawful until they are found otherwise in an action brought for that purpose or until altered or revoked by the board.*"

The ordinary method of reviewing the action of a board exercising legislative and *quasi*-judicial power is by *certiorari.*

*Borgnis v. Falk Co.* (1911) 147 Wis. 327, 133 N. W. 209. We have no doubt that under this section orders of the board may be reviewed by *certiorari,* and if the order complained of constitutes a clear violation of law either because not within the power of the board or is unreasonable, it may be set aside in such an action. *State ex rel. Augusta v. Losby* (1902), 115 Wis. 57, 90 N. W. 188. In the absence of a special provision for review in ch. 159, Stats., it must be held that the general provision contained in sec. 140.05 (3), Stats., controls.

Sec. 159.03 (1), Stats., provides: "The board shall enforce the provisions of this chapter and shall prescribe and enforce rules and regulations governing beauty parlors, and schools teaching cosmetic art and for the examining and licensing of managers, operators and manicurists and the registration of apprentices and students, and shall make and enforce rules governing sanitary and hygienic conditions surrounding the practice of cosmetic art and the conduct and operation of beauty parlors and schools of cosmetic art."

By the provisions of this section schools teaching cosmetic art become a part of the subject matter under the supervision of the State Board of Health to the end that the administration thereof shall be efficient and that the health of the public shall be protected. While laws creating administrative agencies generally provide that no action to set aside an order of such an agency shall be brought unless application has been made to the agency for a hearing thereon and no such provision is contained in ch. 159, Stats., that lack has been supplied by the State Board of Health by rule as will appear later. This rule is attacked on the ground that it is exercise of an undelegable legislative power. It is considered that this contention cannot be sustained. We shall spend no time demonstrating that an administrative agency can lawfully be empowered to make rules for its own procedure. What the complaining party is entitled to who seeks a review of an order

of the State Board of Health is an opportunity to be heard and to have a record made upon which a review may be had. For the reasons stated we consider that the lawfulness and reasonableness of the order complained of was not before the trial court and is not before this court on appeal.

While the plaintiff complains with respect to several provisions of the statute, its principal contention is that sec. 159.02 (5), Stats., is unconstitutional. Sub. (5) is as follows:

"A school shall provide its students with subjects for practical work. The charge made for materials used shall not exceed the reasonable cost thereof. No school shall advertise for patrons to be used in clinical work. The board shall enforce the provisions of this section."

The State Board of Health in the exercise of the power conferred upon it by this section made an order which provided:

"6. No school may charge a patron more than the reasonable costs of materials used."

The board set up a list of services and determined the reasonable cost of materials consumed in the rendition of each service. The rule further provided:

"Any school may apply to the board for an order establishing other maximum amounts to be charged by it, upon furnishing the board with adequate proof that the costs of materials used by it exceed the amounts herein set forth."

It is to be noted that the statute contains no express provision forbidding a school to charge for services rendered. However, under the language of the statute, if a beauty school so-called practices cosmetic art it becomes a beauty parlor, the services being rendered by students rather than by operators and apprentices.

Sec. 159.13, Stats., provides: "(1) No person shall engage in the practice of cosmetic art unless he holds a license issued by the board.

"(2) Licenses shall be issued only to such persons who are possessed of the requisite skill as cosmeticians or manicurists. . . ."

This would prohibit a "student," as defined by sec. 159.01 (8), Stats., as "any person engaged in learning cosmetology in a licensed school of cosmetology" from procuring a license as a cosmetologist. A consideration of these several sections leads us to the conclusion that a school of cosmetic art may not charge for the services rendered by its students. It is apparent from the language of the section that schools of cosmetic art have customarily charged for the materials consumed in the rendition of the service. By charging an exorbitant price for such materials the schools derived a substantial revenue therefrom. Such part of the charge as was more than a reasonable charge for the materials, manifestly became a charge for the service rendered. To prevent such an evasion of the rule, the statute authorizes the board to establish reasonable prices for materials, which it has done. Under the rule if the price charged is insufficient to cover the reasonable cost of materials, the school is entitled to a hearing, and in the event that it deems the order made unlawful or unreasonable, it may be reviewed by *certiorari* in accordance with well-established practice. In this case the petitioner did not ask for a hearing. It is considered that the board acted within the scope of its power in setting up the schedule of reasonable prices and that the reasonableness of those prices cannot be considered in this action.

The plaintiff has attempted to raise other questions, most of which relate to what plaintiff chooses to designate "economic rules," which are in fact regulatory orders. The only contention we deem it necessary to consider is the contention that the statutory requirements for apprentices are more lenient and lax than those required for a student. The plaintiff argues that under the statute beauty parlors may make any charge they may see fit for services rendered by apprentices

while the school is restricted in its charges to reasonable cost of materials and for that reason the statute is discriminatory. Petitioner cites the case of *Harrigan & Reid Co. v. Burton* (1923), 224 Mich. 564, 195 N. W. 60, 33 A. L. R. 142, in support of its contention. That case relates to the power of a municipal corporation under a home-rule provision to require a heating contractor to furnish bond for the benefit of his customers. In the first place that case dealt with the exercise of the police power by a municipal corporation. In the second place it was an attempt to regulate a trade or business. Ch. 159, Stats., provides for the regulation of schools of cosmetic art. It is well within the power of the state to require a school to remain in its proper and legitimate field, or if not, to make itself subject to the laws regulating the trade or business. While it holds itself out as a teacher, a school of cosmetic art cannot complain because it is not permitted at the same time to operate as a beauty parlor. While ch. 159, Stats., regulates certain conditions which have to do with the public health, it is much more than a health law. Under its provisions the business of beauty parlors and schools of cosmetic art are regulated in other respects.

It is considered that the chapter in question as applied to the teaching of cosmetic art is not a price-fixing statute. The power to fix the price of materials used is an exercise of police power to prevent imposition upon the public and evasions of the provisions of the statute. The schools of cosmetic art are not engaged in the business of selling materials, they are engaged in qualifying students to become practitioners of the art. There seem to be many sound reasons for requiring schools of cosmetic art to remain within their particular field in the exercise of the power of the state to promote the health, safety, and general welfare of the public.

*By the Court.*—Judgment affirmed.