## Philadelphia School of Beauty Culture v. State Board of Cosmetology et al.

*James H. Booser* and *Samuel A. Schreckengaust, Jr.*, of *McNees, Wallace & Nurick*, for plaintiff.

*T. McKeen Chidsey*, Attorney General, and *Elmer T. Bolla*, Deputy Attorney General, for defendants.

SMITH, J., May 28, 1951.—This proceeding is in equity. It was originally brought by Philadelphia School of Beauty Culture, a Pennsylvania corporation, plaintiff, against Francis B. Haas, Superintent of Public Instruction of the Commonwealth of Pennsylvania, defendant, to restrain the enforcing of an alleged unconstitutional statutory provision contained in section 7 of the Act of May 3, 1933, P. L. 242, 63 PS §507 et seq., hereinafter called the Beauty Culture Law, and a regulation issued by defendant pursuant thereto un-

der which schools of beauty culture are not permitted to make any charge for materials used by their students in giving clinical treatments to the public.[1]

The Beauty Culture Law, as appears from its title, was enacted under the police power "to promote the public health and safety" and, among other things, regulates schools of beauty culture.

Section 7 of the act (63 PS §513) provides:

"Student Practice upon the Public for Pay Prohibited.—It shall be unlawful for any school of beauty culture to permit its students to practice beauty culture upon the public under any circumstances except by way of clinical work upon persons willing to submit themselves to such practice after having first been properly informed that the operator is a student. No school of beauty culture shall, directly or indirectly, charge any money whatsoever for treatment by its students *or for materials used in such treatment.*" (Italics supplied)

The regulation made by the Department of Public Instruction in section VII-C-7 of its Bulletin 605, 1945, entitled "Interpretations and Regulations for the Administration of the Beauty Culture Law" sets forth, inter alia, that "Any direct or indirect charge for Beauty Culture Service in a School of Beauty Culture is definitely forbidden by Section 7 of the Act" and, further, that "All necessary supplies shall be furnished by the school, free of charge."

## The Bill

Plaintiff in its bill avers, inter alia, that continuously since 1933 it has owned and operated, and presently owns and operates in the City of Philadelphia, a school of beauty culture known as Rudemar School of Beauty Culture in which it has invested large sums of money in advertising, materials, appliances, ap-

---

[1] Subsequent to the filing of the bill, for the reasons hereinafter set forth, the State Board of Cosmetology and its several members were duly substituted as defendants.

paratus, equipment and fixtures; that its school is in direct competition with schools of beauty culture located in adjoining States where there are no comparable provisions of the law with respect to furnishing clinical materials free of charge; that at the time of the filing of the bill it had an enrollment of more than 100 students; that the preparation and training for the practice of beauty culture require extensive clinical work by each student; that the reasonable cost of materials so used by its students in clinical work now substantially exceeds the sum of $5,000 per annum; that to compel plaintiff to absorb this cost will impose upon it an excessive and unreasonable financial burden, do it immediate and irreparable injury, jeopardize the existence of its school and invade its property rights. Whereupon, plaintiff avers that, although it at no time has charged and never will charge for students' services, it does intend to charge the public the reasonable cost of materials used by them in giving clinical treatments and, further, that, to the extent section 7 of the Beauty Culture Law and the regulation issued pursuant thereto prohibit plaintiff from so doing, they are an invalid exercise of the police power and, otherwise, are unconstitutional and void.

Plaintiff, in its bill, does not attack or question any other provisions of the Beauty Culture Law, including the provision in section 7 thereof prohibiting a school of beauty culture from, directly or indirectly, charging any money whatsoever for treatment by its students.

### The Answers

Defendant first filed an answer raising preliminary objections wherein it contended that the bill should be dismissed for the 10 reasons therein averred. In Philadelphia School of Beauty Culture v. Haas, 78 D. & C. 97, all the preliminary objections were dismissed. In so doing, this court did not pass upon but

reserved the constitutional questions raised in the bill and directed that the case proceed to final hearing. Defendant then filed an answer to the merits wherein proof of certain facts pleaded in plaintiff's bill was demanded and, further, wherein it was averred that the provisions of section 7 of the Beauty Culture Law in question and the regulation adopted pursuant thereto were constitutional as a proper exercise of the police power.

Testimony was then taken and argument had before the court en banc. The case is now for disposition.

### The Stipulations

Subsequent to the hearing several stipulations were duly entered into. Under the first stipulation, approved by this court January 20, 1950, the State Board of Cosmetology and its several members were substituted as defendants in place of Francis B. Haas, Superintendent of Public Instruction of the Commonwealth of Pennsylvania.[2] This stipulation further provided that "8. All previous references in the pleadings and in the trial of this matter pertaining to the administration and enforcement of the Beauty Cuture Law by Francis B. Haas, Superintendent of Pubic Instruction, original defendant, shall be deemed to be equally applicable to the State Board of Cosmetology and its members."

Under the second stipulation, approved by this Court March 21, 1950, it was agreed that, in the instant case, "the sole question to be decided by the Court of Common Pleas of Dauphin County, or by any appellate court . . . upon all the pleadings and testimony produced in support thereof, is the constitutionality of

---

[2] For the legislation creating the State Board of Cosmetology as a departmental administrative board in the Department of Public Instruction and the legislation whereby the duties theretofore imposed by the Beauty Culture Law upon the department were transferred to the State Board of Cosmetology, see Act of May 12, 1949, P. L. 1289, and Act of May 12, 1949, P. L. 1285. Both of these acts were passed and became effective subsequent to the filing of the instant bill.

section 7 of the Beauty Culture Law as applied to a charge by plaintiff's school for materials used in clinical treatments given by students as set forth in the record."[3]

Accordingly, we shall confine ourselves entirely to the single issue as stipulated by the parties.

### Findings of Fact

1. Plaintiff, Philadelphia School of Beauty Culture, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with principal office in the City of Philadelphia.

2. The duty of enforcing the provisions of the Beauty Culture Law of May 3, 1933, P. L. 242, theretofore imposed on Francis B. Haas, Superintendent of Public Instruction of the Commonwealth of Pennsylvania, original defendant, was transferred by legislation enacted in 1949, and subsequent to the filing of the instant bill, to the State Board of Cosmetology, also created by legislation enacted in 1949.

3. The State Board of Cosmetology and Helen J. Dunbar, La Verta M. Harper, Charlotte W. Rice, Thomas W. Webster, and Francis B. Haas, Superintendent of Public Instruction, duly appointed members thereof, were thereupon, by stipulation approved by this court on January 20, 1950, substituted as defendants in the case at bar in place of original defendant.

4. Continuously since 1931 plaintiff has owned and operated in the City of Philadelphia and presently owns

---

[3] A third stipulation was also entered into, approved by this court on March 21, 1950, wherein it was agreed that "all the pleadings, testimony and decisions of the Court of Common Pleas of Dauphin County, as well as the decisions of any appellate court", in the case at bar, "shall be deemed applicable to, and determinative of, the issues raised by the bill of complaint" filed in this court to equity docket no. 1866, Commonwealth docket, 1948, no. 220, by Beautyhall, Inc., v. Haas, Superintendent of Public Instruction et al.

and operates therein a school of beauty culture under the fictitious name of Rudemar School of Beauty Culture.

5. From the effective date of the Beauty Culture Law, plaintiff has been duly licensed to conduct its school, first, under the name of Rudemar School of Beauty Culture and, since 1949, under its corporate name.

6. Since the establishment of its school of beauty culture, plaintiff has expended upward of $2,300 a year in advertising it.

7. Plaintiff owns no real estate. However, its investment, as of December 31, 1948, in equipment, fixtures and leasehold improvements employed in the operation of its school had a depreciated value of $7,722.11.

8. In 1948 plaintiff had an average monthly enrollment of 81.5 in its school. At the time of the hearing held November 2, 1949, plaintiff had 125 such students who registered from various States, including Pennsylvania, New Jersey, New York and Massachusetts.

9. The minimum time required by the Bureau of Professional Licensing of the Department of Public Instruction of a student in a school of beauty culture is 1,000 hours, divided among the several subjects as follows: Theory, 200 hours; facials, 75 hours; finger waving, 125 hours; haircutting, 75 hours; hair dying, 75 hours; manicuring, 100 hours; marcel waving, 150 hours; permanent waving, 125 hours; scalp treatment, 50 hours, and sterilization and hygiene, 25 hours.

10. For practical reasons, as well as those of health, students in a school of beauty culture are unable to perform repeatedly on other students certain operations necessary to their training, such as hair waving, hair dying and facials. Section 7 of the Beauty Culture Law impliedly recognizes this fact. It permits, under

certain specified conditions, such students to practice beauty culture upon the public by way of clinical work. This practice, although not required by law, is suggested and recommended by defendants.

11. Preparation and training for the practice of beauty culture require extensive clinical work by each student during the period of instruction. Such clinical work entails the use of a large quantity of bleaches, creams, lotions, powders, solutions, dyes, shampoos, rinses, nail polish, and other materials.

12. The minimum cost of materials now used by each student of plaintiff's school in clinical work, exclusive of Federal cosmetic tax, lipstick, powder, rouge, cotton and tissue, is $53.16, and, including Federal tax, is $62.15.

13. The reasonable cost of materials used by students of plaintiff's school in clinical work at the present time substantially exceeds the sum of $5,000 per annum.

14. Prior to 1936 the materials used by plaintiff's students in giving clinical treatments to the public were supplied to it and to other schools of beauty culture, free of charge, by manufacturers as a form of advertisement. Subsequent to the date above mentioned this practice was discontinued.

15. The State Board of Cosmetology and its several members, substituted defendants, have adopted and have advised plaintiff that they intend to enforce section VII-C-7 of Bulletin 605, as promulgated by the Department of Public Instruction in 1945, which provides: "Any direct or indirect charge for Beauty Culture Service in a School of Beauty Culture is definitely forbidden by Section 7 of the Act. . . . All necessary supplies shall be furnished by the school, free of charge."

16. Compliance with the regulation and section 7 of the Beauty Culture Law, insofar as they prohibit any

charge for materials used by its students in clinical treatments, has become progressively burdensome to plaintiff's school due to the greatly increased cost of materials used therein; the development in recent years of new and more expensive processes; and the fact that plaintiff no longer receives from manufacturers, free of charge, materials and equipment for use in its school.

17. Plaintiff, in the operation of its school of beauty culture in 1948, sustained a loss of $7,920.

18. Plaintiff will be unable to continue the operation of its school unless it either raises tuition fees or is permitted to charge patrons of its clinics the reasonable cost of materials used therein.

19. Tuition fees covering the entire course of study in plaintiff's school now amount to $275 cash, or $300 time, and are as high as its students can afford to pay.

20. Plaintiff at no time has, directly or indirectly, made any charge whatsoever for services rendered by its students in giving clinical treatments.

21. Plaintiff in 1948 started to charge and is now charging the public the reasonable cost of materials used by its students in giving clinical treatments; and this under advice of counsel that the prohibition against such charge is unconstitutional.

22. To permit plaintiff to charge the public for the reasonable cost of materials used by its students in clinical treatments would have no adverse affect on the public health and safety but, on the contrary, would enable plaintiff to give its students the benefit of additional clinical work and thereby provide a more complete course of instruction and graduate better trained beauty operators.

## Discussion

The Beauty Culture Law was enacted under the State's police power to promote the public health and

safety.[4] Plaintiff concedes that the reasonable regulations of schools of beauty culture is a proper subject for the exercise of the police power.[5]

It is plaintiff's contention, however, that the provisions of section 7 of the Beauty Culture Law and the regulation adopted thereunder to the extent that they prohibit a school of beauty culture from charging the public the reasonable cost of materials used by its students in giving clinical treatments, have no real, reasonable or substantial relation to public health and safety or to any other legitimate police power purpose and, therefore, are illegal and cannot be enforced on the grounds that they violate article I, sec. 1 of the Pennsylvania Constitution by interfering with plaintiff's freedom to use and enjoy its property, and, further that they violate article I, sec. 9 of the Pennsylvania Constitution and the fourteenth amendment of the Constitution of the United States by depriving plaintiff of its property without due process of law and by denying to it equal protection of the laws.[6]

The constitutional questions here raised by plaintiff must be considered in the light of two well settled rules: First, that there is a presumption of constitutionality attending a legislative enactment, which presumption endures until it plainly and unquestionably appears

---

[4] The title to the Beauty Culture Law is "An act to promote the public health and safety by providing for examination and registration of those who desire to engage in the occupation of beauty culture; defining beauty culture, and regulating beauty culture shops, schools, students, apprentices, teachers, managers and operators; conferring powers and duties upon the Department of Public Instruction; providing for appeals to certain courts by applicants and licensees; and providing penalties".

[5] Generally as to this see 7 Am. Jur., Barbers and Beauty Specialists, 613-14, §2; Old Reliable Barber School v. Ade et al., 43 Dauphin 307; Hoff v. State, 39 Del. 134, 197 Atl. 75; Lee et al. v. Delmont et al., 228 Minn. 101, 36 N. W. (2d) 530.

[6] Other constitutional questions raised by plaintiff in its bill were not pressed by it.

that the challenged statute or provision thereof violates the fundamental law, and, second, that a law or a provision thereof repugnant to the Constitution is void and it is the duty of a court so to declare when the violation unequivocally appears: Hertz Drivurself Stations, Inc., v. Siggins et al., 359 Pa. 25, 33.

The general principles as to the scope and extent of the police power are also well settled. After a most exhaustive review of the authorities, they were restated in the Hertz case, supra. Therein, speaking for the Supreme Court, Mr. Justice Jones held that the legislature may not under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations (p. 46); that an exercise of the police power, if it is to be valid constitutionally, must bear a reasonable relation to a lawful end sought to be attained thereby and can never be exerted legally except it be exercised in the public interest (p. 47); that unless a given exercise of the power promotes or tends to promote the public safety, health, morals or welfare, it is without constitutional sanction (pp. 47-48); that to justify the State in imposing its authority in behalf of the public it must appear not only that the interests of the public generally, as distinguished from those of a particular class, require such interference, but also that the means employed are reasonably necessary for the accomplishment of the purpose and are not unduly oppressive upon individuals (p. 48); that a legislative declaration that an act is to promote the public health and safety is not conclusive of the question, and the ultimate decision rests with the courts (pp. 40-41); and finally, that, as the highest attribute of government, the police power must, at all times, be exercised with scrupulous regard for constitutionally guaranteed private rights; can be properly exercised

only in the public welfare, and, if exercised otherwise, will be stricken down as a perversion of the sovereign power (pp. 50-51).

Again, as said in Flynn et al. v. Horst et al., 356 Pa. 20, 31:

"The reasonableness of a 'police regulation' of any business depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to 'interfere with the enjoyment of individual rights beyond the necessities of the case': Reduction Company v. Sanitary Works, 199 U. S. 306, 318. 'The measure of police power must square with the measure of public necessity. The public need is the pole-star of the enactment, interpretation and application of the law,' . . .".

The precise question before us does not appear to have been passed upon by our own appellate courts, and the determination thereof depends upon the application of the above-stated legal principles to the facts as established by the record.[7] However, a question somewhat analogous to that here presented was considered in Brasier v. State Board of Barber Examiners, 193 Okla. 74, 141 P.(2d) 563 (1943). The Supreme Court of Oklahoma theretofore in Schwarze v. Clark et al., 188 Okla. 217, 107 P.(2d) 1018 (1940) had held that students doing clinical work in a barber school were practicing the barber trade and that, therefore, a regulation prohibiting such schools from charging for services of its students was constitu-

---

[7] The constitutionality of the Act of June 19, 1931, P. L. 589, regulating barber shops and barber schools, and section 12 of which act, as amended by the Act of May 9, 1935, P. L. 158, contained provisions similar to those found in section 7 of the Beauty Culture Law, was raised in this court in Old Reliable Barber School v. Ade et al., 43 Dauphin 307. However, the action was not pressed by plaintiff therein and the constitutional questions were never finally decided by this court.

tional as a valid exercise of the police power, since the students were not duly licensed barbers as required by law. Nevertheless, in the Brasier case the same court later held that a rule promulgated by the State Board of Barber Examiners prohibiting barber colleges from charging persons receiving services for the cost of materials used in connection therewith was unreasonable and in violation of the statute authorizing the board to make "reasonable" rules and regulations. The court, in its opinion, did not pass upon the constitutional question of due process but predicated its decision on the basis of the unreasonableness of the board's rule. Therein, after stating that any rule was unquestionably valid which reasonably tended to carry out the objectives of the statute pertaining to the public health and maintenance of sanitary conditions, the court said, p. 76:

". . . It would seem rather that the public health would be better protected by permitting the charge to be made, since it would tend to assure the maintenance of sanitary conditions in the college. . . ."

While this Oklahoma decision construed an administrative regulation, it is highly persuasive authority that a requirement of such free materials is unreasonable even though it is found in a statute.

Again, in other jurisdictions, a broader question, not raised by plaintiff in the case at bar, has been before the appellate courts as to whether a legislative enactment prohibiting barber or beauty culture schools from charging for the services of their students is constitutional as a valid exercise of the police power. Such prohibition was held constitutional in State v. Conragan et al., 54 R. I. 256, 171 Atl. 326 (1934) and Toebe Academy of Beauty Culture, Inc., v. Kelly et al.,

State Board of Health, 239 Wis. 103, 300 N. W. 476 (1941), although the Wisconsin statute did permit schools to charge for the reasonable cost of materials; and unconstitutional in Moler v. Whisman et al., 243 Mo. 571, 147 S. W. 985 (1912) ; Schneider v. Duer et al., 170 Md. 326, 184 Atl. 914 (1936) ; Schum et al. v. Alexander et al. (U. S. District Court for North Dakota, unreported, 1937) ; and State ex rel. Mitchell, Atty. Gen., v. Thompson's School of Beauty Culture, Inc., et al., 226 Iowa 556, 285 N. W. 133 (1939). In holding such provision to be unconstitutional the court, in the Thompson's School of Beauty Culture case, quoting extensively from the Schum case, said, p. 562:

"A question which would seem to be directly analogous to the question here presented to us was passed upon by a three judge federal court in the District of North Dakota in the case of Schum et al., v. Alexander et al., decided October 27, 1937, and not officially reported. In that case, the constitutionality of the North Dakota cosmetology statute was challenged because of a provision that no school should make any charge for services or material for work done by a student 'except the actual cost of the material used'. The court held such provision unconstitutional. After quoting the provision of the law, the court states its conclusion as follows: 'That said portion of said law hereinbefore in Paragraph Two of these Conclusions quoted, cannot be sustained as a constitutional enactment on the ground that said enactment is an exercise of the police power of the State in the interest of public health, morals or public safety. That the enactment referred to has no real or substantial relation to those objects or either of them, that there is no such relationship between the charges made or to be made by schools for services to the public and the public health, morals and safety, as to lay a constitutional foundation for said enactment, as an exer-

cise of the police power of the State, and that said enactment is an invasion of the rights of the complainants secured by the Fourteenth Amendment, U. S. C. A. Const., and such portion of said Act hereinbefore quoted, and the rules, regulations and promulgations of the defendants thereunder are void'."

Although we are not here passing upon the constitutionality of a legislative enactment prohibiting a school of beauty culture from charging for students' services, the reasoning in the case from which we have just quoted, we believe, supports plaintiff's contention. In this connection, it is significant that defendants in the instant case have not assigned any reason or called our attention to any fact even remotely indicating that the public health and safety will be promoted, protected or safeguarded by prohibiting a school of beauty culture from charging for the reasonable cost of materials used by its students in clinical treatments. On the contrary, it appears, under all the evidence, that to permit such a charge would be in the interest of public health and safety in that it would enable a school of beauty culture to give its students the benefit of additional clinical work and thereby provide a more complete course of instruction and graduate better trained beauty operators.

Upon application of the legal principles hereinbefore stated to the facts of the instant case, none of which facts are controverted by defendants, we are of the opinion that the provisions of section 7 of the Beauty Culture Law and of the regulation adopted thereunder, to the extent here challenged by plaintiff, are unconstitutional and void in that they bear no reasonable relation to the lawful end sought to be attained in the public interest for the protection of public health and safety; are unduly oppressive; arbitrarily interfere with and impose an unnecessary restriction

upon plaintiff's private business and, under the guise of police regulation, deprive plaintiff of its property without due process of law.

The constitutionality of the other provisions of the Beauty Culture Law is not here attacked by plaintiff so that, after giving effect to our finding and striking out the void provision, the valid provisions of section 7 of the Beauty Culture Law will read as follows:

"Student Practice upon the Public for Pay Prohibited.—It shall be unlawful for any beauty culture school to permit its students to practice beauty culture upon the public under any circumstances except by way of clinical work upon persons willing to submit themselves to such practice after having first been properly informed that the operator is a student. No school of beauty culture shall, directly or indirectly, charge any money whatsoever for treatment by its students." [8]

Thus, a school of beauty culture will still be prohibited from making any direct or indirect charge for the services of its students. And any indirect charge therefor in the guise of charging for the cost of materials can be readily controlled by defendants by regulation as was done in the Toebe Academy of Beauty Culture, Inc., case, supra.

In view of the foregoing, we state the following

### Conclusions of Law

1. The Beauty Culture Law of May 3, 1933, P. L. 242, is an enactment purporting to have been passed under the State's police power to promote the public health and safety.

---

[8] Section 21 of the Beauty Culture Law (63 PS §527) contains a severability provision. Further, since the valid provisions of section 7 of the law standing alone are completely capable of being executed in accordance with the legislative intent, our action gives full effect to section 55 of the Statutory Construction Act (46 PS §555).

2. The provision of section 7 of the Beauty Culture Law which prohibits plaintiff, in the operation of its school of beauty culture, from charging the public the reasonable cost of materials used by its students in giving clinical treatments has no real, reasonable or substantial relation to public health and safety or to any other legitimate police power purpose.

3. The provision of section 7 of the Beauty Culture Law which prohibits plaintiff, in the operation of its school of beauty culture, from charging the public the reasonable cost of materials used by its students in giving clinical treatments violates article I, sec. 1 of the Pennsylvania Constitution by interfering with plaintiff's freedom to use and enjoy its property, and Article I, sec. 9 of the Pennsylvania Constitution and the fourteenth amendment to the Constitution of the United States by depriving plaintiff of its property without due process of law, and by denying to it equal protection of the laws, and is, therefore, illegal and void.

4. The provision of the regulation set forth in section VII-C-7 of Bulletin 605, 1945, issued by the Department of Public Instruction and adopted by defendants, entitled "Interpretations and Regulations for the Administration of the Beauty Culture Law", which prohibits plaintiff, in the operation of its school of beauty culture, from charging the public the reasonable cost of materials used by its students in giving clinical treatments has no real, reasonable or substantial relation to public health and safety or to any other legitimate police power purpose.

5. The provision of the regulation which prohibits plaintiff, in the operation of its school of beauty culture, from charging the public the reasonable cost of materials used by its students in giving clinical treatments violates article I, sec. 1 of the Pennsylvania

Constitution by interfering with plaintiff's freedom to use and enjoy its property and article I, sec. 9 of the Pennsylvania Constitution and the fourteenth amendment to the Constitution of the United States by depriving plaintiff of its property without due process of law, and by denying to it equal protection of the laws, and is, therefore, illegal and void.

6. Plaintiff is entitled to an injunction enjoining and restraining defendants from enforcing or attempting to enforce the provisions of section 7 of the Beauty Culture Law and the regulation issued pursuant thereto insofar as they have been found to be illegal and void by the court in the preceding conclusions of law.

## Decree Nisi

And now, May 28, 1951, it is ordered, adjudged and decreed that defendants, and each of them, their successors in office, subordinates and employes, be and they are hereby enjoined and restrained from enforcing, or attempting or threatening to enforce, in any way or manner, directly or indirectly, the provisions of section 7 of the Beauty Culture Law of May 3, 1933, P. L. 242, and of section VII-C-7 of Bulletin 605, 1945, issued by the Department of Public Instruction, entitled "Interpretations and Regulations for the Administration of the Beauty Culture Law", insofar as and to the extent that the provisions prohibit plaintiff, in the operation of its school of beauty culture, from charging the public the reasonable cost of materials, used by its students in giving clinical treatments. The prothonotary is directed to enter this decree nisi and forthwith notify the parties to this proceeding, or their counsel. If no exceptions are filed within 10 days from the date hereof, a final decree will be entered; costs to be paid by defendants.