**MAINE BEAUTY SCHOOLS, INC. d/b/a Golden School of Beauty Culture and Creative Hair Designs, Inc. d/b/a York Beauty Academy and Clement E. Fortin d/b/a Central Beauty School,**

v.

**STATE BOARD OF HAIRDRESSERS of the State of Maine.**

Supreme Judicial Court of Maine.

Jan. 11, 1967.

Berman, Berman, Wernick & Flaherty, by Sidney W. Wernick, Portland, for plaintiffs.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for defendant.

Malcolm S. Stevenson, Bangor, amicus curiae.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

MARDEN, Justice.

On report. The controversy centers upon an amendment (Chapter 349 P.L.1965) to our statute regulating hairdressers and beauticians (32 M.R.S.A. §§ 1551–1657).

The amendment adds three sentences to § 1553, which section prescribes the qualifications for schools of hairdressing and beauty culture, including the study hours required, and a provision that such study hours may include "practical demonstrations." The amendment reads as follows.

"Practical demonstrations will include supervised practice which shall consist of rendering service to persons other than fellow students, but such practice shall be of a clinical nature and under the direct supervision of a duly licensed instructor. No such school, nor any student registered therein nor any other person shall charge, either directly or indirectly, or receive any fee for any services rendered on any person acting as a subject for student instruction and training. The State Board of Hairdressers shall make rules and regulations that no school may charge more than the reasonable cost of supplies and materials used, and shall set up a schedule for such charges used in practical demonstrations. This schedule shall be posted at each school approved by the board."

This amendment was effective September 3, 1965 and seasonably thereafter the State Board of Hairdressers (Board) prepared a schedule of charges to be made in "practical demonstrations." The validity of the amendment is challeged constitutionally by the complaining schools of beauty culture contending that (1) the prohibition from charging service fees is without reasonable relationship to the protection of public health and safety under the police power of the State, (2) that the statutory prohibition and proposed schedule of prices are arbitrary, discriminatory and unequal in application, and that apart from the constitutional questions, the schedule of prices proposed under the statute is invalid because it was the action by less than a majority of the duly constituted voting membership of the Board.

Upon the complaint, which sought a declaratory judgment upon the validity of the statute and an injunction against its enforcement by the Board, with prayer for a temporary restraining order, a temporary restraining order was granted, pending which the Maine Beauty Shop Association sought and was granted leave to intervene as amicus curiae. By agreement the restraining order was extended "until further order of Court" to enable a record to be prepared and the case reported.

Deferring for the moment the constitutional issues, we will dispose of the contention that the Board attempted to act by less than a majority of its duly constituted voting membership.

Before the effective date of the legislative acts of 1961 there had been a board known as the "State Board of Barbers and Hairdressers" which regulated the barbering and hairdressing industry. Sections 213 et seq., Chapter 25 R.S.1954. As to this board, the appointive members of which were appointed by the Governor with Council concurrence, the statute provided that the tenure of its members "shall be * * * for a term of 2 years and until his successor is appointed and qualified." The legislature of 1961 (Chapter 359) separated the two activities, and created a State Board of Hairdressers and a State Board of Barbers. Upon this separation the statute dealing with the State Board of Barbers provided that each member should be similarly appointed for a term of three years "and until his successor is appointed and qualified." (Section 4 of Chapter 359 part of which became Section 230–A of Chapter 25 R.S.1954, now 32 M.R.S.A. § 351.) As to the State Board of Hairdressers, however, the statute provided that "[t]he tenure of each board member (similarly appointed) shall be for 2 years." (Section 1 of Chapter 359, part of which became Section 213 of Chapter 25 .R.S.1954, now 32 M.R.S.A. § 1601.) Prior to September 3, 1965 the State Board of Hairdressers consisted of four members, three appointed and the Director of the Bureau of Health ex officio. By Chapter 402 P.L.1965, effective September 3, 1965,

the Board was increased to six members, five appointed and the Director of the Bureau of Health ex officio, but without vote.

In compliance with the amendment made by Chapter 349 P.L.1965 the Board met on September 15, 1965 to determine the required price controls. Three of the appointed members and the Board's Executive Secretary attended and conducted the hearing. The hearing being incomplete at the end of the day it was continued to November 3, 1965. The appointment of one of the three voting members who conducted the September 3, 1965 hearing, had been made October 4, 1963, and it is contended that her term expired pending the November 3, 1965 continued hearing whereby she had no power either to act on November 3, 1965, or in the adoption and promulgation of the price schedule which resulted, that the price schedule was not established by a majority of the Board and therefore invalid apart from constitutional considerations.

Title 5 M.R.S.A. § 3 has provided since 1947 (Chapter 4 P.L.1947) that:

"All civil officers, other than judicial officers, appointed by the Governor with the advice and consent of the Council and whose terms of office are fixed by law, shall hold office during the term for which they were appointed and until their successors in office have been appointed and qualified, unless sooner removed in accordance with law."

This statute controls the present situation. The practicalities involved in the effective operation of the multi-various appointive boards, with different periods of office, require a statute such as that cited above. There is no suggestion that the member whose tenure is here questioned had been succeeded or removed. The term of office created by the October 4, 1963 appointment was in effect when the reference price schedule was proposed and in such respect the schedule is valid.

Accepting the membership of the Board as legally competent, the constitutional questions center upon the prohibition against a charge for the services by the student operator, the word operator being used in a broad sense, and the prohibition against a charge of "more than the reasonable cost" of supplies and materials used. "A presumption of great strength" supports the constitutionality of the statute and the burden of showing it otherwise rests upon the plaintiffs. McGary et al. v. Barrows et al., 156 Me. 250, 163 A.2d 747. That the operation of schools for the training of hairdressers, beauticians and cosmetologists properly concerns police power from the standpoint of the health, safety and welfare of the public, is not questioned. The issue is whether the application of this statute is a proper exercise of the police power, and whether the price controls imposed, vis-a-vis the absence of prohibition against charges for the services of apprentices in beauty shops, is arbitrary and discriminatory. The challenge of the legitimacy of this exercise of the police power is grounded upon the contention that the price control feature bears no reasonable relationship to the purpose for which the police control is justified. Control of prices per se is not unconstitutional. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. The health, safety and welfare of the public is concerned from standpoints of sanitation, minimization or spread of communicable diseases and professional and technical competence of those who propose to practice the profession.

No extensive citation of authority is necessary to reaffirm the principle that for a statute to be sustained as a proper exercise of the police power, it must be evident "that there is some clear, real, and substantial connection between the assumed purpose of the enactment and the actual provisions thereof," State v. Union Oil Company of Maine, 151 Me. 438, 447, 120 A.2d 708, 712; that the statute must "not be unreasonable or unnecessarily arbitrary or dis-

criminatory," United Interchange, Inc. of Massachusetts v. Harding, 154 Me. 128, 133, 145 A.2d 94, 97; and that valid exercise of the power "does not permit discriminations by which persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the same conditions." Associated Hospital Service of Maine v. Mahoney, 161 Me. 391, 409, 213 A.2d 712, 722.

The resolution of the current issue turns upon a determination of whether the statutory prohibitions bear any reasonable relation to the purpose for which the reference industry is regulated.

It is understandable that the legislature was impressed by the conflicting economics involved as argued and recorded in the legislative record of the 102nd Legislature beginning on pages 2071, 2236, 2313, 2402, and 2692. The legislature was concerned with contentions on the part of the school operators that the economics of operation did not permit tuition charges to the students to be sufficient to operate the school without income from the "practical demonstrations," wherein the public was permitted to come in for beauty parlor work, aware that the operators were students, and for a charge less than that for comparable services by the registered public shops. The registered shops urged that by such practice on the part of the schools, the schools were in effect operating "cut price" beauty shops and that the profit motive on the part of the school prejudiced both student training and the industry. It was urged that practice of treating the "model,"—as a patron is termed, as a customer, reduced the amount of constructive criticism between the instructor and the student, to the detriment of the student. It was urged that this aspect of the school operation reduced competence of its graduates to the detriment of subsequent employers and the students themselves, when attempting to become independent operators. It was urged that the schools are more interested in the income from the "models" than they are in the student product; that the schools place emphasis on student labor rather than student training.

■ The legislative debate is relevant to our thinking only as it reflects situations from which the application of this statute benefits the health, safety and welfare of the public. Aspects of economic benefit to a particular segment of the regulated industry are not involved. State v. Lonctot (Wash.1963) 384 P.2d 877, 884 [6].

■ Emphasis on vocational training on the one hand and emphasis as a business enterprise on the other need not be irreconcilable, but if the legislature has found that it is, it is within its prerogative. After debate upon five occasions during the legislative course of this proposition, that body concluded that service to the public by these schools without price control was detrimental to the student training and ultimate competence. It follows from such finding that the public interest in its exposure to the abundance of beauty aids on the market, many of which involve personal injury where inexpertly applied, is a matter of health, safety and welfare.

"(C)ourts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws." Seagram & Sons, Inc. v. Hostetter (April 19, 1966) 86 S.Ct. 1254, 1262 [10–12], 16 L.Ed.2d 336.

See also Watson v. State (Oct.1966) Me., 223 A.2d 834. The statute is a constitutional exercise of police power and several jurisdictions have so held. See Schwarze v. Clark (1940) 188 Okl. 217, 107 P.2d 1018, where Board rule prohibited charge for services of student barbers; State v. Conragan (1934) 54 R.I. 256, 171 A. 326, same issue; and Toebe Academy of Beauty Culture, Inc. v. Kelly (1941) 239 Wis. 103, 300 N.W. 476, where Board rule prohibited charge for materials in excess of reasonable cost.

Contra, Moler v. Whisman (1912) 243 Mo. 571, 147 S.W. 985, 987 [9], 40 L.R.A.,

N.S., 629 where statute prohibited charge for services of student or apprentice barber, but Missouri constitution provided "that all persons have a natural right to * * * the gains of their own industry"; State ex rel. Mitchell v. Thompson's School of Beauty Culture, Inc., (1939) 226 Iowa 556, 285 N.W. 133 where statute prohibited charge for student services.

The case of Mansfield Beauty Academy, Inc. v. Board of Registration of Hairdressers (1951) 326 Mass. 624, 96 N.E.2d 145 is urged as requiring us to hold our statute unconstitutional. The Massachusetts statute prohibited a charge for either services or materials. In a bill in equity seeking a declaration as to its constitutionality, the only issue before the court of review was the validity of the prohibition against a charge for materials. This clause was held to be invalid as having "no rational tendency to promote the safety, health, morals, or general welfare of the public." This holding is beside our point, and the only comfort to our plaintiffs is a dictum in which the court said that its holding was "well within the authority of cases declaring that prohibition of charges for students' services * * * is also unconstitutional" citing the *Mitchell* and *Moler* cases, supra, and comparing *Conragan* and *Schwarze*, supra, which are contra. By virtue of a 1958 amendment, the present Annotated Laws of Massachusetts, Chapter 112 § 87U has since stricken the prohibition against charge for materials used. See also Brasier v. State Board of Barber Examiners (1943) 193 Okl. 74, 141 P.2d 563 where prohibition against charge for materials was held unreasonable.

The alleged discriminatory aspect of the statute is founded upon its application to students in beauty schools and not to apprentices in beauty shops. There are real and substantial differences. While both, by definition (32 M.R.S.A. § 1551, subd. 2.) are learners under the direction and supervision of a person duly authorized under pertinent regulations, the similarity stops there.

The student pays the school a tuition fee, ranging from $500 upward, according to legislative information, for which the school by law undertakes to furnish not less than 1500 hours of continuous study over a term of not less than 9 months, to include in its staff a licensed physician who is familiar with electrical appliances adapted to the industry and in its course of study the use of associated antiseptics, cosmetics, etc. (§ 1553). We observe no statutory limit on the number of students per school.

The apprentice negotiates a "tuition" arrangement with his employer, absorbs the techniques of the trade from advice and example, must serve 18 months before Board examinations (§ 1657), and must be the only apprentice in the licensed shop (§ 1651). It is implicit in the apprentice system that he "works his way." The services he can render makes up part or all of his "tuition."

The student is in a vocational school, which holds itself out as a teacher. The apprentice is in a beauty shop matching his initiative and motivation against what his employer may volunteer to share with him. The status of the two with relation to their instruction is different, the conditions of instruction are different. There is a valid basis for difference in legal treatment. See *Toebe*, supra, [10] at page 479 of 300 N.W. Our statute is not per se constitutionally unequal and discriminatory in application, and the establishment and posting of "the reasonable cost of supplies and materials used" to govern the charge to the "model" is valid.

As to the schedule of prices here proposed there are other considerations. We have found that the delegated power under the statute can be and is sustained, but "it does not follow * * * that the * * * rules so made are always reasonable * * *" which due process guarantees. McRae v. Robbins (1942) 151 Fla. 109, 9 So.2d 284, 288 [4, 5]. See also Herrin v. Arnold (1938) 183 Okl. 392, 82 P.2d 977, 984 [6], 119 A.L.R. 1471.

In observance of 5 M.R.S.A. § 2351, which required the Board to afford a hearing to interested persons prior to the adoption of the rule under consideration, the Board held hearings on September 15, 1965 and a continued hearing on November 3, 1965. The report of the September 15, 1965 meeting discloses the presence of thirty-two interested persons representing schools, shops and cosmetologist's associations. The record consists of 25 pages. There is lack of continuity occasioned by more than one person addressing the meeting at one time. The record of the meeting of November 3, 1965 consists of 45 pages, with similar lapses in continuity. It was admitted by the Board that the first list of prices which was proposed, and which had been prepared prior to September 15, 1965, was founded upon trade price lists supplied at the Board's request by manufacturers of beauty products which the Board considered representative. This list was criticized by those in attendance as being arbitrary and not representative of all of the products which the schools used and did not reveal the mathematical processes by which the result was reached. Between the September 15, 1965 and November 3, 1965 hearings the Board sought to revise and amplify the proposed list and for each item to strike a mean between the products highest and lowest in cost. This approach was criticized at the hearing on November 3, 1965, with the additional contention, by those in opposition, that assuming a cost was established for a particular product, the cost did not take into account the different purchasing powers of the schools, as reflected in discounts. The record of both meetings indicates a strongly negative attitude on the part of those attending, their expressions on the subject being more of criticism than an attempt to assist the Board in solving its statutorily imposed duty. The record does establish, however, that the list of proposed "reasonable costs" of supplies does not take into account all of the products which the schools use, and the cost of the several products to the schools with the least purchasing power. Whether or not such a list is possible presents a serious question. The variables involved in the needs of a particular "model," and the number of applications to be derived from a bottle of given fluid weight, or quart, or gallon, or container are marked. The necessity of a school applying many different products, not only to meet the patron's request, but to teach the techniques of such application increases the complications. Unless the reasonable cost per application of all of these products is determined, it would be natural for the school to use only those products which fell within the listed cost or figuratively subsidize the cost of the more expensive preparations if and when such were demanded by the "model."

Once a list of "reasonable costs" is determined and accepted by the industry, the task of enforcing the regulation will be formidable. These burdens, however, are for legislative consideration.

■ The list of prices submitted to the public hearing on November 3, 1965 to be effective November 16, 1965 and appearing in the record of the case as plaintiff's exhibit 1, do not meet the requirements of the statute and an injunction only against the enforcement of the reference price list is ordered.

The statute is constitutionally valid.

The proposed price list of November 16, 1965 does not meet the statutory requirements and an injunction against its enforcement is in order.