ARTHUR B. MOLER, Appellant, v. C. T. WHISMAN
et al.

### Division Two, June 1, 1912.

1. **BARBERS: Judicial Notice: Time to Learn Trade.** Courts cannot take judicial notice of the length of time necessary to teach the average student to satisfactorily perform all the work required of a public barber in such a manner as to prevent the spread of disease.

2. ————: ————: **Spread of Disease: Presumption.** Courts take judicial notice that contagious diseases may be acquired by barbers in plying their trade, and by their customers from them or their tools and soaps; and the presumption arises therefrom, in considering the constitutionality of a police regulation pertaining to barbers and looking to the public health, that barbers should be able to determine whether or not their customers are afflicted with contagious or infectious diseases, particularly diseases of the skin.

3. ————: **Two Years' Course of Study.** The Barbers' Act is not unconstitutional because it fixes the course of study in barber colleges at two years at the least. If two years is a needless restriction, the Legislature alone can give relief.

4. ————: ————: **Gains of Own Industry.** A law requiring a student to work two years before he can become a public barber does not violate the constitutional provision declaring that "all persons have a natural right to life, liberty and the gains of their own industry." Nor does it deprive him of his property without due process of law.

5. ————: **Title of Act: Barbers' Colleges.** The title of the Barber's Act, which is, "An Act to establish a board of examiners for barbers and to regulate the occupation of a barber, in this State, and to prevent the spreading of contagious diseases," is broad enough to authorize a provision in the body of the act relating to barber colleges and apprenticeships.

6. ————: **Prohibiting Compensation to Apprentices: Invalid.** That part of the Barbers' Act (Sec. 1187, R. S. 1909) which prohibits students or apprentices in barber colleges from making any charge for their services while learning the barber's trade, is in conflict with section 4 of article 2 of the Constitution, in that for two years it deprives them of the gains of their own industry, it being established that what a skilful barber should know is learned through physical labor in actual practice at

shaving and hair cutting and dressing, under the directions of ,a competent instructor. That part of the law does not even tend to promote the public health.

7. ———: **Special Law: Displaying Specific Sign: Monopoly.** That part of the Barber's Act (Sec. 1187, R. S. 1899) which prohibits barber colleges from displaying any other sign than "Barber School" or "Barber College" is a special law, and in conflict with that part of section 53 of article 4 of the Constitution which prohibits the enactment of a special law where a general law can be made applicable. It is also in conflict with that part of the same section which prohibits the Legislature from "granting to any association or individual any special or exclusive right, privilege or immunity," since this restriction tends to discourage persons from learning the barber's trade and to create a monopoly for those who have already become skilled barbers.

8. ———: **License: Revoked.** A barber's license may be revoked for graduating barber students after a course of study of less than two years, in violation of the statute, Sec. 1187, R. S. 1909.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Gage, Ladd & Small* for appellant.

(1) The barber law in question is void so far as it prohibits the students of a barber college or their teachers from charging for their services. 1st, because that law prevents them from the "enjoyment of the gains of their own industry," contrary to sec. 4, art. 2, of the Constitution, and is a special law regulating labor, contrary to sec. 53 of art. 4 of that document. State v. Granneman, 132 Mo. 326; Woolley v. Mears, 226 Mo. 41. 2nd, because the law does not also prohibit students or apprentices in barber shops or their teachers, the barbers, from charging for their services. The law is, therefore, obnoxious as "class legislation." There is absolutely no difference in the services performed by barber shop students and those performed by barber college students. None can be even imag-

ined. One does his work in a place with the sign "Barber College" over the door and the other does the same work in a place with a red striped pole in front and the sign "Barber Shop" over the door. In order to learn the trade the students must themselves do the actual work of shaving and cutting hair, whether in a barber shop or a so-called barber college. Generally the barber college is bigger than the barber shop, but no doubt there are some barber shops that have more students and apprentices than some barber colleges. The law in question makes the legality of the thing done depend upon the place where it is done. Such legislation is void. State ˙v. Walsh, 136 [Mo. 403; State v. Thomas, 138 Mo. 100]; Woolley v. Mears, 226 Mo. 41. (2) The regulations we complain of do not affect the health or any other public interest. These students in colleges are expressly authorized to work, but are simply prohibited from charging therefor. And furthermore, the act does not apply to cities of under 5,000 inhabitants. The students in a barber college in a city of less than 5,000 inhabitants, can charge, but those in larger cities cannot. This makes the law perfectly arbitrary. Woolley v. Mears, 226 Mo. 41. (3) It must be borne in mind that the proceeding which this˙ action is brought to enjoin, was a proceeding by the Board of Barber Examiners to revoke the certificate which said Board had theretofore given to plaintiff's manager, Hackney, to practice his profession as a barber. It is not to cancel his permit or certificate to teach the trade of barbering in a barber college, because no special permit for that purpose is required by law. Persons or corporations operating or conducting a barber college are required to have a permit, and all teachers are required to be qualified barbers. Sec. 5042, R. S. 1899. Barbers as well as barber schools are required by this section to do and to refrain from doing certain things, but the board of barber examiners is not authorized

to revoke any barber's license or certificate or to impose any other penalty upon him for violating the provisions of this section, but is authorized to revoke the barber's certificate of a teacher in a barber school for violating any of the provisions of the law, which would not only prevent him from teaching in a barber school, but would also prevent him from practicing his trade as journeyman or owner of a barber shop. Plainly this violates both the State and Federal constitutions. Barber v. Connelly, 113 U. S. 27; State v. Miksicek, 225 Mo. 561. (4) The purpose of this law in requiring students in barber schools to work two years without pay, before they could be qualified barbers, and to let students in barber shops charge for their services, was clearly intended to give barber shops a monopoly of teaching the barber business, for no one would go to a barber school for two years and pay tuition, and get nothing for his services, when he could learn the business in a barber shop in the same time and pay no tuition and get pay for his work besides. State v. Walker, 92 Pac. 776. (5) The law would still be unconstitutional if it were to be enforced equally against the barber and the barber school, because we deny the right of the legislature to select out barbers and barber's schools by themselves, and limit their right to employ and teach apprentices and students and fix the number of teachers to students or apprentices. This is special legislation of the worst sort. Loomis case, 115 Mo. 307; State v. Julow, 169 Mo. 163; State v. Ashbrook, 154 Mo. 390-6; In Re Dickey, 77 Pac. (Cal.) 924. (6) The right to employ apprentices and teach students is a fundamental right which could not, either by special or general legislation, be taken away as long as an American citizen is entitled to the protection of the due process of law, or the law of the land. State v. Tie Co., 181 Mo. 536. (7) The arbitrary provision of this law, that no other signs except "Barber College" or "Barber

School'' should be displayed in or about a barber college is void.  No law could prevent the plaintiff from putting up the signs that he did, namely, free shaving and free hair cutting.  This had no tendency to mislead the public as to his business.  St. Louis v. Gunning, 137 S. W. 929.

*Rheinhardt & Schisby* for respondents.

(1)   Only those whose rights are directly affected by a statute can attack the constitutionality of such act.  State ex rel. v. McIntosh, 205 Mo. 589; Cunningham v. River Co., 165 Mo. 276; 8 Cyc. 788, 791, 993; State ex rel. v. Currens, 111 Wis. 431.  (2)   A statute does not violate sec. 28, art. 4 of the Constitution where all its provisions are germane to and naturally connected with the subject as stated in the title of the act.  State ex rel. v. Vandiver, 222 Mo. 221; Ferguson v. Gentry, 206 Mo. 198; State v. Doerring, 194 Mo. 398; O'Connor v. Transit Co., 198 Mo. 639; Coffey v. Carthage, 200 Mo. 622.  (3)   The Legislature may, without violating sec. 1 of art. 4 of the Constitution, vest boards of examiners with power to investigate and decide upon the  qualifications of applicants for licenses for occupations and professions directly affecting the public welfare.  St. Louis v. Mfg. Co., 139 Mo. 56; State v. Doerring, 194 Mo. 398; State ex rel. v. Lutz, 136 Mo. 633; Ex parte McMonnis, 90 Pac. 702; Exchange v. Knott, 212 Mo. 635.  (4)   The State may regulate the occupation of a barber.  Ex parte Lucas, 160 Mo. 218; State v. Zeno, 79 Minn. 80; State v. Sharpless, 31 Wash. 191.   (5)   Where natural classes exist by the very nature of their inherent conditions the Legislature may treat them as different classes and follow different policies with regard to them.  No legislation is obnoxious as class legislation where all persons subject to it are treated alike under similar circumstances and condi-

tions. White v. Railroad, 230 Mo. 287; Ins. Co. v. Daggs, 172 U. S. 557; State v. Darrah, 152 Mo. 522; State v. Whittaker, 160 Mo. 59; State v. Swagerty, 203 Mo. 517; 8 Cyc. 1063; Railroad v. May, 194 U. S. 267; State v. Webber, 214 Mo. 272. (6) And a classification made by the Legislature is not arbitrary when it would support an argument even though but a poor one. Bush v. Ins. Co., 116 N. Y. Supp. 1056; State v. Vandersluis, 42 Minn. 129; State v. Tower, 185 Mo. 79; People ex rel. v. Metz, 193 N. Y. 148. (7) All doubts must be solved in favor of the validity of the statute. State v. Weber, 214 Mo. 272; State v. Layton, 160 Mo. 489; Harmon v. Coal Co., 156 Mo. 242; State ex rel. v. Warner, 197 Mo. 656.

BROWN, J.—Bill in equity in the circuit court of Jackson county to restrain the revocation of a barber's license. From a judgment for defendants, plaintiff appeals.

The plaintiff is proprietor of a barber college in Kansas City, Missouri, and has in his employ as manager and instructor, one P. R. Hackney, a registered barber.

The defendants compose the State Board of Barber Examiners, and are threatening to revoke the license of plaintiff's said instructor, Hackney, for the alleged reason that he has displayed on plaintiff's said barber college, the sign, "Free Shaving and Hair-Cutting;" that he has collected and permitted the students under his control to collect money for their services in the practice of the trade therein taught; and that he grauduates students after a course of study of less than two years; all contrary to the provisions of section 1187, Revised Statutes 1909.

The evidence shows that plaintiff's barber college is equipped with forty-six chairs and other paraphernalia necessary for conducting a barber shop and teaching the barber's trade; that his instructor Hack-

ney has caused to be displayed on said college the said sign, "Free Shaving and Hair-cutting;" that when students begin work in said college, they charge nothing for their services, but after a few weeks instruction they are permitted to charge for their services; and that the amount they receive is paid one-half to the plaintiff and one-half to the student performing the service. It is also proven that the plaintiff graduates his students after a course of study of less than two years.

The evidence also shows that the barber's trade can only be taught by having the students shave and cut the hair of other persons under the supervision of an instructor; that plaintiff through his students furnishes free shaves to about 1500 persons per week.

No evidence was introduced by either side to prove the length of time required to properly teach the barber's trade; nor was any proof offered to show the danger of spreading infectious or contagious disease by the operation of public barber shops.

Plaintiff does not deny the acts charged against him by defendants, but contends that the judgment ought to be reversed and a decree entered for him because chapter 13, Revised Statutes 1909, entitled "Barbers," is in conflict with the following provisions of the Constitution of Missouri:

Section 4 of article 2 of the Constitution of the State of Missouri, as follows: "That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design."

Section 30 of article 2, as follows: "That no

243 Sup.—37

person shall be deprived of life, liberty or property without due process of law."

Section 1 of article 4, as follows: "The legislative power, subject to the limitations herein contained, shall be vested in a Senate and House of Representatives, to be styled, 'The General Assembly of the State Missouri.'"

Section 53 of article 4, as follows: "The General Assembly shall not pass any local or special laws . . . . granting to any corporation, association or individual any special or exclusive rights, privilege or immunity."

Section 28 of article 4, as follows: "No bill . . . shall contain more than one subject which shall be clearly expressed in its title."

That it is also in conflict with section 1, of the Fourteenth Amendment of the Constitution of the United States, as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

## OPINION.

I. No intention to suppress the operation of public barber shops having been expressed in the title to the bill under which chapter 13, Revised Statutes 1909, was enacted, it will not be assumed that the General Assembly deemed the continued operation of such shops so dangerous to the public health that it desired to terminate that avocation with the present generation and make it necessary for our male posterity to shave themselves or allow their hair and whiskers to grow without let or hindrance from tonsorial artists; yet so complete is the power of the Legislature to prescribe regulations affecting the public health

that we would hesitate to say it could not entirely suppress any occupation which is in fact wholly inimical to the public health.

Courts take judicial notice of those things which are common knowledge to the majority of mankind. [Hobbs v. Railroad, 113 Mo. App. 133; Greenleaf on Evidence (14 Ed.), sec. 6; Grimes v. Eddy, 126 Mo. 168.] But we do not judicially know how much time would be required to teach the average student to satisfactorily perform all the work required of a public barber in such a manner as to prevent the spread of disease. The courts take judicial notice that some diseases are spread by diseased persons coming in contact with those who are healthy; and that barbers on account of their very close contact with their customers, may contract diseases or allow their tools or soaps to become contaminated by the virus or germs of diseases, and thereby communicate such diseases to their patrons; therefore, a prima facie presumption arises that barbers should be able to determine whether or not those who apply to them for shaves are afflicted with contagious or infectious diseases, particularly diseases of the skin. We have already determined that public barber shops are a proper subject of legislative control. [Ex parte Lucas, 160 Mo. 218.] Therefore, as the Legislature was proceeding within its proper sphere in enacting chapter 13, supra, we hold that its action in fixing the course in barber colleges at two years is not unconstitutional.

The State cannot convert to its own use the property or labor of a citizen without compensation, under the pretext of preventing the spread of disease; but because a law designed to protect public health requires a student to work two years before becoming a public barber, it does not for that reason violate section 4 of article 2 of the Constitution of Missouri guaranteeing to all persons the enjoyment of the gains of their own industry; nor does it conflict

with section 30, article 2, of said Constitution; nor with section 1 of the Fourteenth Amendment of the Federal Constitution prohibiting the taking of property without due process of law. [St. Louis v. Liessing, 190 Mo. 464.]

"The general right to engage person or property in any trade, profession or business is subject to the power inherent in the State to make all rules and regulations respecting the use and enjoyment of property rights necessary for the preservation of the public health, morals, comfort, order and safety; and such regulations do not deprive owners of property without due process of law." [8 Cyc. 1110.]

It may be that the law under consideration requiring a two years' course for barbers, places a needless restriction upon those who desire to learn the barber's trade (Legislatures, like courts, sometimes make mistakes); if so, relief should be sought through the Legislature. We have no general veto power, and cannot annul public laws simply because they are in some respects unwise or inexpedient. [State ex rel. Scotland County v. Bacon, 107 Mo. 633; O'Connor v. Transit Co., 198 Mo. 642.]

II. Plaintiff assails the constitutionality of chapter 13, supra, because the title of the bill creating the law is not broad enough to embrace barber colleges, and the law therefore is obnoxious to section 28, article 4, of the Constitution of Missouri, requiring the subject of each bill to be clearly expressed in its title. The title is as follows:

"An act to establish a board of examiners for barbers and to regulate the occupation of a barber, in this State, and to prevent the spreading of contagious disease."

The above title is amply sufficient to support that part of the law authorizing the regulation of barber colleges and apprentices in barber shops. No better

way could be thought of to regulate a vocation or trade than to require those who desire to pursue the same to become learned in the trade by serving an apprenticeship or attending a school where the trade is taught. [State v. Doerring, 194 Mo. 398.]

III. Plaintiff further contends that said section 1187, supra, is class legislation, in that it divides a natural class of persons into artificial classes, contrary to section 53, article 4, of our Constitution, by prohibiting students in barber colleges from charging for their services, while allowing apprentices in barber shops to charge for their work. This contention may be well founded but as we find that such parts of said section as prohibit apprentices from receiving pay for their services is invalid on another ground it is not necessary to consider this assignment.

IV. It is earnestly insisted by plaintiff that section 1187, Revised Statutes 1909, which prohibits students or apprentices in barber colleges from making any charge for their services while learning the barber's trade, deprives such students of the gains of their own industry, as prohibited by the aforesaid section 4, article 2, of the Constitution of Missouri.

After twice hearing this cause and giving it most diligent consideration, we have arrived at the conclusion that this contention is correct. .

It is proven and not denied that practically everything a skilful barber should know is learned through physical labor in shaving, cutting and dressing the hair and beard, with such observations as he may make while performing the physical labor under the suggestions and directions of a competent instructor.

Now if students of the barbers' trade be compelled to labor two years without pay and without their instructors receiving any remuneration for their services (as required by section 1187, supra), it is difficult to see why they would not thereby be deprived of the

gains of their own industry, as prohibited by our organic law.

If a barber college or the proprietor of a barber shop were allowed to receive pay for the labor performed by a student or apprentice, then such barber college or proprietor of a barber shop could afford to teach the barber's trade, or aid the student or apprentice in learning the trade for a reasonable compensation, and the student would thereby indirectly receive some remuneration for his toil; but such is not the case under the law now in judgment.

The practice of boys or young men apprenticing themselves to skilful mechanics, artisans or professional men in order to qualify themselves for useful trades and professions is almost as old as civilization itself; but the barbers' law is the first regulation which has ever come to our knowledge that prohibits both the apprentice and his master from receiving any remuneration whatever for services of the apprentice, thereby compelling the apprentice to waste two years of his time while qualifying for a public barber.

It is true, as announced in Ex parte Lucas, 160 Mo. 218, that the barber trade, because of its intimate relation to the public health is a proper subject of legislative control, under the general police power of the State; but it does not follow that the Legislature may impose arbitrary or capricious exactions upon the students of that occupation, which have no relation to the public health. The Legislature having recognized the legitimacy of this profession, cannot destroy it under the guise of "regulation."

The learned attorney for defendants has not assigned any reason or called our attention to any fact even remotely indicating that the public health will be promoted, protected or safeguarded by requiring students of the barber's trade to work for two years without compensation. On the contrary, the simplest application of the laws of reason and common sense,

demonstrates that an apprentice who receives compensation for his toil will take a deeper interest in his work and learn more thoroughly those things which he needs to know about preventing the spread of disease than if he be required to work without pay; hence, that part of the law under consideration cannot be even said to tend to promote the public health, which is the pretended purpose for which it was enacted.

V. Plaintiff also attacks the constitutionality of said section 1187, Revised Statutes 1909, because it prohibits barber colleges from displaying any other sign than "Barber School" or "Barber College," and is therefore a local or special law, and in conflict with section 53, article 4, of the Constitution of Missouri prohibiting the enactment of any special law where a general law can be made applicable. One of the defendants' grounds for attempting to revoke the license of plaintiff's instructor is because he displayed on plaintiff's college signs not authorized by law. Therefore, this point is squarely at issue in this case.

The sign of the college, like the sign used by any other institution, is but a means of advertising the character of its business. We can see no connection between safeguarding the public health and denying the right of any person conducting a moral and legitimate business to advertise the same in any manner he sees fit, so long as his advertisements speak the truth and do not deceive the public.

Chapter 13, supra, expressly recognizes the right of barber colleges to teach the barber's occupation; consequently, so far as the sanction of the law is concerned, they are on an exact level with every college where other useful trades and professions are taught; and we can conceive of no reason why its right to advertise its business could not have been governed by a general law prohibiting all schools and colleges from displaying any sign or advertisement except the name

of the occupation therein taught. In the case of State v. Granneman, 132 Mo. 326, we held a law unconstitutional which prohibits barbers from working on Sunday, because the act was special legislation and could have been covered by a general law.

Section 1187, supra, in so far as it prohibits barber schools and barber colleges from advertising their business the same as other schools, and in so far as it prevents barber colleges and students therein from charging or receiving pay for their services, seems to have been intended to discourage additional persons from learning the barber's trade, thereby creating a monopoly for those who have already become skilled in that vocation; and such a purpose would also render the law invalid under section 53, article 4, of the Missouri Constitution, which prohibits the General Assembly from "granting to any . . . association or individual any special or exclusive right, privilege or immunity."

VI. The plaintiff's resourceful attorneys have in their brief assailed the constitutionality of the barbers' law on other grounds not within the issues presented in this case, but we will not consider these points until they are presented on facts which render it necessary and appropriate to investigate them.

Defendants also contend that if students of the barber's trade are permitted to charge for their services, they will become active competitors of licensed barbers. Such competition as comes from the labor of apprentices is a necessary and unavoidable incident of all trades and professions. Defendants' argument is unsound for another reason. If we concede that it is lawful to teach the barber's trade at all, then the work of apprentices will be less injurious to licensed barbers, if such apprentices charge for their services than if they work without pay, for the same reason that the convict labor is more injurious to workmen than paid labor.

Possibly some barbers like some lawyers and other persons who have attained successful and remunerative positions in professional and commercial life, become anxious to shut out competition by "burning the bridges behind them," 'so to speak, but such a scheme is entirely un-American, because it is the policy of a free commonwealth to encourage thrift and industry among its citizens and to keep the door of opportunity ajar so that every qualified and deserving person who so desires may enter thereat.

While we find that those provisions of section 1187, supra, which prohibit barber colleges and barber schools from advertising their business, and prohibiting such schools and students therein from charging for their services are void, because obnoxious to the Constitution; yet as we have seen that the provisions requiring a two-year course in such schools to entitle students to a barber's license is constitutional, and the plaintiff having violated the latter provision of said section by graduating or pretending to graduate students in less than two years, as charged by defendants, the judgment of the circuit court is affirmed. *Ferriss, P. J.,* and *Kennish, J.,* concur.