**MISSOURI VETERINARY MEDICAL BOARD, Respondent,**

v.

**Brooke Rene MS. GRAY and B & B Equine Dentistry, Appellant.**

**No. WD 75162.**

Missouri Court of Appeals, Western District.

Feb. 19, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 26, 2013.

Application for Transfer Denied May 28, 2013.

David Roland, St. Louis, MO, for Appellants.

Edwin Frownfelter, Kansas City, MO, for Respondent.

Before: GARY D. WITT, P.J., THOMAS H. NEWTON, J., and ZEL M. FISCHER, SP. J.

THOMAS H. NEWTON, Judge.

Brooke Rene Gray (Ms. Gray) and B & B Equine Dentistry appeal the circuit court's judgment enjoining and prohibiting Ms. Gray, doing business as B & B Equine Dentistry, from performing equine tooth floating or any other act constituting the practice of veterinary dentistry as defined in Chapter 340, RSMo 2000, for compensation in the State of Missouri. Ms. Gray asserts three points on appeal. First, she argues that the circuit court erred in ruling that the State may prohibit her from accepting compensation for animal husbandry services she could otherwise lawfully provide because article I, section 2 of the Missouri Constitution prevents the State from arbitrarily prohibiting citizens from enjoying the gains of their own industry. Second, she asserts that the circuit court erred in ruling that the State may deny her right to earn a living by receiving payment for floating horses' teeth, alleging that such a restriction is not rationally related to any legitimate state interest. Third, Ms. Gray contends that the circuit court erred in holding that the State may selectively enforce its veterinary laws because the State has no rational basis for taking action against non-veterinarian tooth floaters while declining to take action against non-veterinarian farriers. We affirm.

Ms. Gray is the owner and sole proprietor of an unincorporated business called

B & B Equine Dentistry. Ms. Gray is not licensed as a veterinarian, and B & B Equine Dentistry is not licensed as a veterinary facility. Ms. Gray, individually and through B & B Equine Dentistry, has engaged in the service of equine "tooth floating" for compensation. Tooth floating is defined as a procedure by which the sharp enamel points are rasped or removed from the teeth of horses. The tooth floater may sedate the animals during this process and utilize power tools to perform the procedure. Both dentistry and drug administration are included within the statutory definition of veterinary medicine when applied to animals. § 340.200(28), RSMo Cum.Supp.2011.

The Missouri Veterinary Medical Board is a statutorily created entity charged with governing the practice of veterinary medicine in the state of Missouri. § 340.210, RSMo 2000. The Board has the authority to apply to a court of general jurisdiction for an injunction against any person who, without a license, offers to engage or engages in the performance of any acts which constitute the practice of veterinary medicine.[1] *Id.*, § 340.216, RSMo 2000, § 340.276, RSMo 2000.

On October 17, 2007, the Board informed Ms. Gray that providing equine dental services for compensation, without a Missouri veterinary license, violated Missouri law. The Board advised Ms. Gray that, if she did not cease and desist such activity, the Board would consider pursuing a court injunction and/or criminal charges. In January of 2010, the Board was notified that Ms. Gray continued to provide equine dental services. After investigation, the Board referred the matter to the Missouri Attorney General's office. On September 3, 2010, the Attorney General filed a petition on behalf of the Board and against Ms. Gray to enjoin Ms. Gray

from practicing equine dentistry or administering medication to animals for valuable consideration. On September 26 and 27, 2011, the circuit court heard the matter and, on December 21, 2011, issued a judgment enjoining and prohibiting Ms. Gray from performing equine tooth floating or any other act constituting the practice of veterinary dentistry for compensation in Missouri. Ms. Gray appeals.

▮ The circuit court's interpretation of the Missouri Constitution is reviewed *de novo*. *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 204 (Mo. banc 2008). The constitutional validity and construction of state statutes are also reviewed *de novo*. *School Dist. of Kansas City v. State*, 317 S.W.3d 599, 604 (Mo. banc 2010). A statute is presumed valid and will be found unconstitutional only if it clearly contravenes a constitutional provision. *In re Brasch*, 332 S.W.3d 115, 119 (Mo. banc 2011).

▮ In her first point on appeal, Ms. Gray contends that the circuit court erred in ruling that the State may prohibit her from accepting compensation for animal husbandry services she could otherwise lawfully provide because article I, section 2 of the Missouri Constitution prevents the State from arbitrarily prohibiting citizens from enjoying the gains of their own industry. We find no error.

Article I, section 2 of the Missouri Constitution states:

> That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to

---

1. Unless such acts fall within statutory exceptions.

these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

Our legislature has defined "veterinary medicine" as including animal "dentistry." § 340.200(28).[2] Ms. Gray does not deny that she engaged in equine dentistry and practiced under the trade name B & B Equine Dentistry but argues that the State cannot constitutionally prohibit her from profiting from her practice per the gains of industry clause. Ms. Gray argues that the Missouri Supreme Court in *Moler v. Whisman*, 243 Mo. 571, 147 S.W. 985 (1912), so held when it concluded that, while the State may impose occupational regulations designed to protect public health and safety, it may not arbitrarily prohibit citizens from accepting compensation for services they could otherwise lawfully provide. *Moler* does not command Ms. Gray's right to profit from practicing equine dentistry for three reasons.

First, the exception in *Moler*, that recognizes the State's right to impose occupational regulations designed to protect public health and safety, is met. Our Supreme Court established in *Linton v. Missouri Veterinary Medical Board*, 988 S.W.2d 513, 516 (Mo. banc 1999), that the legislature has a legitimate interest in establishing a high level of competence for veterinarians in Missouri because healthy domestic animals, a safe food supply and a sound agricultural economy in this State are heavily dependent on quality veterinary services. To achieve that end, Missouri requires licensure to publicly practice veterinary medicine. § 340.216. In *Linton*, the court upheld the Board's refusal to issue Janet Linton a veterinary license because it took her four, rather than three, times to pass a required examination. *Id.* at 514. Consequently, Linton, already a doctor of veterinary medicine, was denied the ability to practice veterinary medicine for valuable consideration in Missouri. Here, Ms. Gray is only prohibited from practicing and/or profiting from practicing veterinary medicine to the extent that she fails to meet the legislative requirements for such practice. While Ms. Gray focuses on the procedure of equine tooth floating and contends that such practice presents minimal public health and safety risks, we defer to the legislature and its ability to carve an exception if it deems fit.[3]

■ Ms. Gray also argues that her prohibition from engaging in equine dentistry without a license violates her constitutional right to enjoy the gains of her industry because her skills may exceed those of licensed veterinarians, which suggests that the prohibition is irrational. Ms. Gray's skills may well be exceptional. "However, when the legislature has spoken on the subject, the courts must defer to its deter-

2. Per 340.200(28), "veterinary medicine" is fully defined as:
   the science of diagnosing, treating, changing, alleviating, rectifying, curing or preventing any animal disease, deformity, defect, injury or other physical or mental condition, including, but not limited to, the prescription or administration of any drug, medicine, biologic, apparatus, application, anesthesia or other therapeutic or diagnostic substance or technique on any animal, including, but not limited to, acupuncture, dentistry, animal psychology, animal chiro-

practic, theriogenology, surgery, both general and cosmetic surgery, any manual, mechanical, biological or chemical procedure for testing for pregnancy or for correcting sterility or infertility or to render service or recommendations with regard to any of the procedures in this paragraph[.]

3. We note, however, that the evidence reflects that the administration of sedatives to large animals and the use of power tools during the tooth floating procedure suggests that tooth floating is not without danger.

minations of public policy." *Budding v. SSM Healthcare System,* 19 S.W.3d 678, 682 (Mo. banc 2000). Taken to its logical end, Ms. Gray asks us to conclude that anyone with competency should be able to publicly perform, on animals, invasive and complex surgical procedures, prescribe and administer drugs and anesthesia, etc. Yet, how is such competency to be proven so as to protect the public health and safety? Our legislature has chosen licensure as a means of regulating competency, and our courts have upheld the rationality of this choice. *Linton,* 988 S.W.2d 513; *see also Massage Therapy Training Institute, LLC v. Missouri State Bd. of Therapeutic Massage,* 65 S.W.3d 601, 607–608 (Mo.App.2002).

Second, Ms. Gray contends that *Moler* prohibits the State from preventing financial gain for services that would otherwise be lawful. Ms. Gray suggests that it is irrational that she may "lawfully do all the tooth floating she wants—just as long as no grateful horse owner gives her anything of value in appreciation for her work." Ms. Gray, however, has not proven that the business she engages in is otherwise lawful. Section 340.216.1 states:

> It is unlawful for any person not licensed as a veterinarian under the provisions of sections 340.200 to 340.330 to practice veterinary medicine or to do any act which requires knowledge of veterinary medicine for valuable consideration, *or for any person not so licensed to hold himself out to the public as a practitioner of veterinary medicine* by advertisement, the use of any title or

abbreviation with the person's name, or otherwise[.] [4]

Ms. Gray states that "she is the owner and sole proprietor of an unincorporated business called B & B Equine Dentistry" in which capacity she "provide[s] assistance to Missouri citizens who own livestock." As previously stated, the practice of animal dentistry is also considered the practice of veterinary medicine under Missouri law. § 340.200(28). Ms. Gray holds herself out to the public as practicing equine dentistry, publicly practices equine dentistry, and desires to continue to publicly practice equine dentistry. Therefore, the work Ms. Gray engages in is not lawful, per section 340.216, with or without compensation, because prior to rendering her services she first holds herself out to the public, i.e. Missouri citizens, as a practitioner of veterinary medicine.[5]

We disagree with Ms. Gray's contention that the State's allowance of some non-veterinarians to lawfully engage in practices otherwise prevented under the statute, as long as they take no compensation, suggests that the law does not rationally relate to public safety. The law prohibits offering veterinary services to the public without a license, with or without compensation. It is difficult to say who an unlicensed individual rendering veterinary services without compensation might be, perhaps a friend or helpful neighbor, but it must be someone not publicly offering services. The remuneration exception may well be the distinction between a neighborly act of kindness and a public

4. We added the emphasis.

5. While there are exceptions under the statute for supervised veterinary students, veterinary school graduates, and an animal's owner or their full-time employee, Ms. Gray does not fall within an exception. While it does appear that Ms. Gray would be entitled to com-

pensation for her services if she were hired full-time by an animal's owner, as the law is written, she would still be in violation of the law if she held herself out to the public as performing services that fall within the auspices of veterinary medicine. § 340.216.1(2), (5), (6).

business that the State has more of an interest in regulating.[6]

Finally, *Moler* addressed a law which prohibited students or apprentices in barber colleges from receiving compensation for their services while learning the trade. 147 S.W. at 988. The court concluded that forbidding such compensation deprived students of the gains of their own industry and was prohibited by the Missouri Constitution. The facts of *Moler* are not helpful to Ms. Gray's cause. Ms. Gray is not a student of a veterinary school learning the veterinary trade. If she were, she would not be before us as section 340.216.1(2) provides an exception for such students.

Moreover, the holding in *Moler* most applicable to Ms. Gray's case is its finding regarding the constitutionality of a law requiring at least a two-year course of study prior to becoming a public barber. The court upheld this requirement by finding that public barber shops are a proper subject of legislative control and courts do not judicially know how much time would be required to teach the average student to satisfactorily perform all the work required of a public barber. *Moler*, 147 S.W. at 987. The court found that "as the [l]egislature was proceeding within its proper sphere in enacting [the law], we hold that its action in fixing the course in barber colleges at two years is not unconstitutional." *Id.* The court went on to state:

> The state cannot convert to its own use the property or labor of a citizen without compensation under the pretext of preventing the spread of disease, but, because a law designed to protect public

health requires a student to work two years before becoming a public barber, it does not for that reason violate section 4 of article 2 of the Constitution of Missouri guaranteeing to all persons the enjoyment of the gains of their own industry, nor does it conflict with section 30, art. 2, of said Constitution, nor with section 1 of the fourteenth amendment of the federal Constitution prohibit[ing] the taking of property without due process of law. (citations omitted)

> It may be that the law under consideration requiring a two years' course for barbers places a needless restriction upon those who desire to learn the barber's trade (Legislatures, like courts, sometimes make mistakes); if so, relief should be sought through the Legislature.

*Id.* (citations omitted).

Ms. Gray, in essence, asks us to annul the legislative requirement of licensure for practicing equine dentistry and substitute our own judgment. As was the case in *Moler*, this we cannot do. Point one is denied.

■ In her second point on appeal, Ms. Gray contends that the circuit court erred in ruling that the State may deny her the right to earn a living by receiving payment for floating horses' teeth because such restriction is not rationally related to any legitimate state interest. Ms. Gray claims that the State is denying her constitutional rights to life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1.

Ms. Gray's substantive due process claim fails if the contested restriction is

---

6. The statutory exceptions for animal owners and their full-time employees amplify that the State's focus for the regulation is protection of the public. § 340.216.1(5). Conceptually, the public is more protected by the regulation of those who hold themselves out to the public as competent in veterinary medicine than by the regulation of the individual acts of animal owners who entrust their own animals to themselves or their own full-time employee. These individuals are still governed by abuse and neglect statutes.

rationally related to a legitimate state interest. *Callier v. Dir. of Revenue, State of Mo.*, 780 S.W.2d 639, 642 (Mo. banc 1989). As discussed in point one, our Supreme Court established in *Linton*, 988 S.W.2d at 516, that the legislature has a legitimate interest in establishing a high level of competence for individuals practicing veterinary medicine in Missouri. Ms. Gray's equine dental practice is considered the practice of veterinary medicine under Missouri law. § 340.200(28). As our Supreme Court concluded that the aforesaid State interest was justification for the State to deny Linton her right to practice veterinary medicine after she had completed all veterinary coursework, yet failed to pass a licensure exam within three tries, we cannot very well find that Ms. Gray has the right to practice veterinary medicine with no veterinary coursework and no licensure. Point two is denied.

■ In her third point on appeal, Ms. Gray contends that the circuit court erred in holding that the State may selectively enforce its veterinary laws because the State has no rational basis for taking action against non-veterinarian tooth floaters while declining to take action against non-veterinarian farriers. Ms. Gray asserts that the State's application of sections 340.216.1 and 340.276 denies her the equal protection of the law guaranteed by the Fourteenth Amendment and Article I, section 2, of the Missouri Constitution. As with substantive due process, the equal protection clause requires that legal classifications have a rational relationship to a legitimate state interest. *Callier,* 780 S.W.2d at 642.

Ms. Gray cites *Merrifield v. Lockyer,* 547 F.3d 978 (9th Cir.2007), as authority for her equal protection claim. *Merrifield* addressed an equal protection challenge to a licensure statute that exempted non-pesticide pest controllers of vertebrate animals such as bats, raccoons, skunks, and squirrels, but required licensure of non-pesticide pest controllers of mice, rats, or pigeons. With regard to Merrifield's challenge, the court stated:

> Merrifield's claim must be rejected as long as there is any reasonably conceivable state of facts that could provide a rational basis for the challenged law. The government is not required to substantiate its reasoning with facts. In an equal protection case of this type … those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not *reasonably* be conceived to be true by the governmental decision maker. The State is not compelled to verify *logical* assumptions with statistical evidence.

*Id.* at 989 (internal citations and internal quotation marks omitted). Under this standard, the court concluded that the singling out of three types of vertebrate pests from all other vertebrate animals, and requiring licensure of pest controllers pursuing only those three, was irrational and, therefore, unconstitutional. *Id.* at 991–992.

In *Merrifield,* the conduct of the business was the same and yet arbitrary and irrational distinctions were drawn with regard to classifications within that business. Here, while Ms. Gray assumes section 340.200(28) includes farriers, the statute does not explicitly reference farriery or horseshoeing, and Ms. Gray has not proven applicability of the statute to farriers. This could be why the Board has not pursued farriers. Ms. Gray's evidence at trial shows that the Missouri Veterinary Medical Board has not solely targeted equine tooth floaters. Ms. Gray asked the Board in an interrogatory to identify any persons to whom, since 2003, a cease and desist letter had been sent related to certain activities, all of which Ms. Gray apparently believed to fall within section 340.200(28).

Along with those practicing equine dentistry, the board acknowledged sending letters to individuals engaged in estrus synchronization, heat detection, dehorning, castration, artificial insemination, vaccination, spaying/neutering, emergency services, embryo transfer, herd work, and massage. Although we need not reach factual or legal conclusions as to whether the aforementioned actions are included in the statute, like animal dentistry, it could be argued that section 340.200(28) expressly includes most if not all of the aforementioned within the definition of veterinary medicine. The fact that farriery and horseshoeing is an age-old practice, and yet the legislature did not expressly include the practice in section 340.200(28), suggests that the legislature intended the exclusion.[7]

Therefore, while Ms. Gray contests what she deems to be the State's disparate application of the statute, Ms. Gray has not proven that the statute is applicable to farriers. If Ms. Gray's claim is that the State cannot statutorily pursue non-licensed animal dentists and exempt non-licensed farriers, Ms. Gray has also not proven that equine tooth floating and horseshoeing are similar to the extent that they encompass the same risks or require the same level of skill, expertise, and education such that differentiation between the two by the State would be unreasonable, illogical, or irrational. Point three is denied.

We, therefore, conclude that the circuit court did not err in ruling that the State may constitutionally prohibit Ms. Gray from the gains of her industry for her animal husbandry services. The State's prohibition is not arbitrary as the State has a legitimate interest in establishing a high level of competence for individuals who practice veterinary medicine, and Ms. Gray has not met the proper statutory requirements for such practice and does not fall within statutory exceptions. Similarly, the court did not err in ruling that constitutional due process does not prevent the State from prohibiting Ms. Gray from receiving payment for floating horses' teeth. The State's prohibition is rational as the State has a legitimate interest in establishing a high level of competence for individuals who practice veterinary medicine, and Ms. Gray has not met the proper statutory requirements for such practice. Finally, the court did not err in holding that there was no equal protection violation where the State prevented Ms. Gray's actions as an equine tooth floater but took no action against farriers. Ms. Gray has not proven that the law she contests applies to farriers and has also not proven that equine tooth floating and horseshoeing are similar to the extent that differentiation by the State would be irrational. We, therefore, affirm the circuit court's judgment.

WITT, P.J., and FISCHER, SP. J. concur.

---

7. It is worth noting that the court in *Merrifield* also examined a due process challenge to the licensure of structural pest control operators. On Merrifield's substantive due process argument, the court concluded that the challenged licensing requirements had a connection to competence in the field and, therefore, satisfied rational basis review. 547 F.3d at 988. The court stated that where the government had a legitimate interest in the regulation, it was enough that "it might be thought that the particular legislative measure was a rational way to correct it." *Id.* "The licensing statute does not fail because it is not tailored to each precise specialization within a field." *Id.* This finding in *Merrifield* runs contrary to Ms. Gray's claim that her tooth floating specialization within the field of veterinary medicine should be exempt from licensure.