**SWALLOW TAIL, LLC, Appellant,**

v.

**The MISSOURI DEPARTMENT OF CONSERVATION, Respondent.**

**WD 79560**

Missouri Court of Appeals, Western District.

Opinion filed: March 7, 2017

Application for Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Jeffrey R. King, for Appellant.

Heidi D. Vollet, for Respondent.

Before Division One: James E. Welsh, Presiding Judge, Anthony Rex Gabbert, Judge and Edward R. Ardini, Jr., Judge

EDWARD R. ARDINI, JR., JUDGE

Swallow Tail, LLC ("Swallow Tail") filed a Petition for Damages and Injunctive Relief in the Circuit Court of Cole County, asserting multiple claims against the Missouri Department of Conservation ("Conservation Department") and the Missouri Conservation Heritage Foundation ("Heritage Foundation") relating to the Conservation Department's alleged design, support, and operation of a compensatory mitigation program sponsored by the Heritage Foundation and known as the Stream Stewardship Trust Fund ("SSTF"). All claims brought against the Heritage Foundation were dismissed by the trial court. A bench trial was held, and the trial court entered findings of fact, conclusions of law, and judgment in favor

of the Conservation Department and against Swallow Tail on all remaining claims. Swallow Tail appeals.

In its first point on appeal, Swallow Tail alleges that the trial court misapplied article III, section 38(a) of the Missouri Constitution. The trial court concluded that the Conservation Department's activities did not violate this section because they had the primary public purpose of preserving or enhancing the state's natural resources. Swallow Tail alleges in its second point on appeal that the trial court misapplied article IV, section 43(b) of the Missouri Constitution. The trial court rejected Swallow Tail's broad construction of this constitutional provision and found no violation, noting that its argument was inconsistent with almost forty years of section 43(b) jurisprudence. We find no error of the trial court and affirm the judgment.

## I. STATEMENT OF FACTS [1]

When a project is proposed that requires a permit under section 404 of the Clean Water Act, 33 U.S.C. § 1344, or similar laws ("404 permit") because it will have a negative environmental impact to rivers, streams, or wetlands in a particular ecological drainage unit ("EDU"), the Army Corps of Engineers ("Corps") may authorize the 404 permit with the provisional requirement that the party proposing the project purchase credits from a mitigation bank or an in-lieu fee program to compensate for environmental damage. The Corps usually requires that these credits be purchased from a mitigation bank or an in-lieu fee program in the same EDU as the project that is expected to cause the environmental harm. A permittee may use either in-lieu fee program credits or mitigation bank credits, which are equal to each other, to fulfill the credit purchase requirement when both types of credits are available for purchase in an EDU.

Entities that sponsor mitigation banks or in-lieu fee programs receive credits from the Corps in exchange for completing or agreeing to complete mitigation projects. The Corps uses the Missouri Stream Mitigation Method to measure the benefit of a particular mitigation project to streams or other natural resources, and credits are released or awarded based on that determination. Project criteria and credit allocation and valuation are outlined in instruments approved by the Corps that govern the operation of the mitigation bank or in-lieu fee program.

Although both receive credits in exchange for mitigation projects, in-lieu fee programs and mitigation banks operate differently. A mitigation bank earns credits from the Corps by attaining specific ecological performance goals in a particular EDU as outlined in the mitigation bank instrument. The Corps does not set or regulate the price of credits sold by mitigation banks, and mitigation banks are not restricted in how they may use the funds generated from the sale of those credits. Swallow Tail is a Missouri limited liability

---

1. The Conservation Department's motion to strike Swallow Tail's statement of facts is denied. This court notes, however, that "Rule 84.04(c) requires the statement of facts to be a fair and concise statement of the facts relevant to the questions presented for determination without argument. The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *Green v. Shiverdecker*, 514 S.W.3d 41, 43, 2017 WL 574916 at *1 (Mo. App. W.D. Feb. 14, 2017) (citations and internal quotation marks omitted). When reviewing a court-tried civil case, "the evidence is viewed in the light most favorable to the trial court's judgment." *White v. Dir.* of Revenue, 321 S.W.3d 298, 302 (Mo. banc 2010). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

company that sponsors for-profit mitigation banks.

The Corps also issues credits to in-lieu fee programs, which are operated by non-profits or governmental entities. An in-lieu fee program is granted a certain amount of advanced credits in its instrument as a way for the program to raise funds for future mitigation projects. An in-lieu fee program may also earn additional credits from the Corps when it completes a project that meets certain ecological goals. The credit prices, agreed on by the in-lieu fee program and the Corps, reflect the actual cost of each project, and in-lieu fee programs are required to include full cost accounting in their instruments. Unlike mitigation banks, funds generated through the sale of credits by in-lieu fee programs are restricted by federal regulations and may only be used for future mitigation projects with a limited exception relating to administrative fees.

The Heritage Foundation is a non-profit that is organized exclusively for the benefit of the Conservation Commission of the State of Missouri ["Commission"] and the Missouri Department of Conservation and sponsors the SSTF, an in-lieu fee program that operates pursuant to an instrument approved by the Corps. The purpose of the SSTF is to facilitate stream mitigation. Because permittees may purchase credits from any in-lieu fee program or mitigation bank within an EDU, the SSTF and Swallow Tail compete in the sale of credits.

The Conservation Department is a subdivision of the Missouri state government, directed by the Commission, and constitutionally vested with the "control, manage-

ment, restoration, conservation, and regulation of the bird, fish, game, forestry, and all wildlife resources of the state...." Mo. Const. art. IV, sec. 40(a). One goal of the Conservation Department is to engage partners in order to enhance natural resources and the effective delivery of conservation services, which allows the Conservation Department to accomplish more in furtherance of its mission. The promotion of water quality and quantity for healthy fish, forest, and wildlife is within the Conservation Department's mission.[2]

The Conservation Department staff is provided with specific guidelines for deciding when to undertake a project within a particular watershed area. These guidelines have been approved by the Conservation Department director and were developed in an effort to most effectively use the Conservation Department's limited resources on priority projects. After being contacted by a landowner, the Conservation Department staff follows a decision tree guided, in part, by whether the landowner's issue is located in a high-priority watershed. The Conservation Department staff assists landowners in finding the best source of funds to accomplish priority watershed projects by consulting the guidelines, which lists the Heritage Foundation and SSTF as well as other funding sources such as the U.S. Department of Agriculture, Missouri Department of Natural Resources, and the Conservation Department's own funds. The staff is also encouraged to inform potential partners about priority projects, and the guidelines specifically list stakeholders that work with the Conservation Department within priority watersheds, such as other agency

---

2. The mission of the Conservation Department is "[t]o protect and manage the fish, forest, and wildlife resources of the state; to facilitate and provide opportunity for all citizens to use, enjoy, and learn about these resources." The Missouri Constitution vests the Conservation Commission and Department of Conservation with "[t]he control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state...." Mo. Const. art. IV, sec. 40(a).

staff, city or county governments, not-for-profits, and other individuals and groups. The Conservation Department does not typically partner with for-profit entities.

If a landowner contacts the Conservation Department with a watershed project that the Conservation Department has determined to be a priority, the Conservation Department staff will next consider whether the project fits the criteria for SSTF or other funding. Projects that fit the SSTF criteria generally include (1) preservation projects, (2) stream bank stabilization projects, or (3) span structure bridges, each of which has an ecological benefit. If the project fits the criteria for SSTF funding, then the Conservation Department staff will put together a grant application on behalf of the landowner. The grant application must be approved by the Conservation Department's director before being sent to the Heritage Foundation for its consideration and approval. Pursuant to the in-lieu fee program instrument approved by the Corps, the Conservation Department may perform administrative tasks on behalf of the Heritage Foundation so long as those costs are reimbursed by the Heritage Foundation.

## II. DISCUSSION

Swallow Tail alleges two points on appeal. First, Swallow Tail alleges that the trial court misapplied article III, section 38(a) of the Missouri Constitution, which it argues prohibits the Conservation Department from using its resources to primarily benefit a private entity. The trial court concluded that the activities of the Conservation Department relevant to this case had a primary public purpose of preservation or enhancement of the state's natural resources. Swallow Tail alleges in its second point on appeal that the trial court misapplied article IV, section 43(b) of the Missouri Constitution, which it argues re-

quires the Conservation Department to use all resources in or generated by the Conservation Commission Fund for conservation purposes and further that the credits received by the Heritage Foundation are generated by the Conservation Department's activities and thus any proceeds from the sale of those credits must be deposited into the Conservation Commission Fund. The trial court noted that Swallow Tail's broad interpretation of section 43(b) would require anyone receiving a benefit from the Conservation Department's conservation activities to remit that benefit to the Conservation Commission Fund. Such an interpretation is without legal precedent in the almost forty year history of section 43(b) and was rejected by the trial court.

### A. Standard of Review

 The judgment of the trial court in a court-tried civil case will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The circuit court's interpretation of the Missouri Constitution is reviewed *de novo*." *Missouri Veterinary Medical Bd. v. Gray*, 397 S.W.3d 479, 481 (Mo. App. W.D. 2013) (citing *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 204 (Mo. banc 2008)).

### B. Grant of Public Money to Private Entities under Missouri Constitution, Article III, Section 38(a)

 Swallow Tail alleges in its first point on appeal that the trial court misapplied article III, section 38(a) of the Missouri Constitution, which prohibits granting public money to a private entity. Swallow Tail specifically argues that section 38(a) prohibits the Conservation De-

partment from using its resources to primarily benefit the Heritage Foundation, a private entity. Swallow Tail asserts that the Conservation Department has violated this prohibition through its work on mitigation projects funded by the SSTF. Swallow Tail claims that the Conservation Department's projects have produced additional mitigation credits for the SSTF to the detriment of other competing entities and resulted in a multi-million dollar "windfall" to the Heritage Foundation. Swallow Tail further claims that the Conservation Department's actions are not for a public purpose because the projects fail to produce a net environmental benefit.

■■■ Article III, section 38(a) of the Missouri Constitution provides that the General Assembly shall not "grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation."[3] A grant of public money to a private person, association, or corporation has been held constitutional if for a public purpose. *Curchin v. Missouri Indus. Dev. Bd.*, 722 S.W.2d 930, 933 (Mo. banc 1987) (citation omitted). The granting of public money or lending of public credit is primarily for a public purpose if it is "for the support of the government or for some of the recognized objects of government, or directly to promote the welfare of the community." *State ex rel. Wagner v. St. Louis County Port Authority*, 604 S.W.2d 592, 597 (Mo banc. 1980) (citation and internal quotation marks omitted). "The consensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classified as involving public purpose." *Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 79 (Mo. banc

1979) (citation and internal quotation marks omitted). "[I]f the primary purpose of the act is public, the fact that [incidental] special benefits may accrue to some private persons does not deprive the government action of its public character[.]" *State ex rel. Atkinson v. Planned Indus. Expansion Auth.*, 517 S.W.2d 36, 45 (Mo. banc 1975) (citation omitted). The burden of establishing that a governmental entity's stated public purpose is arbitrary and unreasonable rests with "the party making the claim." *Wagner*, 604 S.W.2d at 597. The Missouri Supreme Court has previously held that "the preservation of the state's natural resources" is a "public purpose" that justifies a grant of public money to a private entity because "the quality of our environment and the improvement thereof are among the foremost of today's public concerns." *State ex inf. Danforth ex rel. Farmers' Elec. Co-op., Inc. v. State Envtl. Improvement Authority*, 518 S.W.2d 68, 74 (Mo. banc 1975) (citation omitted).

Notably, unlike the cases relied upon by Swallow Tail, the present case at its core does not involve the transfer of public funds to a private entity. Rather, the Heritage Foundation provides grants to the Conservation Department for the completion of projects determined by the Conservation Department to be high priority. Regardless, even to the extent there is direct use of the Conservation Department's own funds, the Conservation Department's construction and maintenance of such projects is constitutional, as the projects are primarily for "the preservation of the state's natural resources[,]" and "the quality of our environment and the improvement thereof" is not only a public purpose justifying a grant of public money to a private

---

**3.** Because Swallow Tail fails to establish a section 38(a) violation, it is not necessary for us to determine the issue raised by the parties of whether section 38(a), which specifically refers to "the General Assembly," also applies to actions of state departments such as the Conservation Department.

entity but is also within the Conservation Department's constitutional mission and guidelines. *See Danforth*, 518 S.W.2d at 74.

In support of its argument that the Conservation Department violates section 38(a) by granting public funds to a private entity, Swallow Tail attempts to craft a violation by pointing to an alleged "windfall" of mitigation credits generated for the Heritage Foundation from the completion of the Conservation Department's projects. These credits are nothing more than incidental benefits that tangentially flow from the completion of environmental mitigation projects. *See Atkinson*, 517 S.W.2d at 45. Swallow Tail's effort to characterize these additional credits earned by the SSTF as public funds of the Conservation Department is far too attenuated, and the credits do not deprive the Conservation Department's actions relating to the conservation mitigation projects of their primary public purpose character. *See id.* Additionally, the Heritage Foundation's in-lieu fee program agreement with the Corps mandates that, with limited exception, the proceeds from the Heritage Foundation's sale of credits be used for new stream-benefiting projects. The Heritage Foundation is "organized exclusively for the benefit of the Conservation Commission of the State of Missouri and the Missouri Department of Conservation[,]" so the funds generated by the sale of these credits will again be used for future mitigation projects within the Conservation Department's mission. Thus, this incidental benefit to the Heritage Foundation simply creates additional funding to complete future high priority projects, continuing to serve a public purpose and the Conservation Department's constitutional mission. Swallow Tail's circuitous effort to cast the additional mitigation credits awarded from the Conservation Department's projects as a section 38(a) violation thus fails.

In apparent recognition that the mitigation projects satisfy the public purpose requirements of section 38(a), Swallow Tail attempts to circumvent this unavoidable conclusion by fashioning an argument that the activity must provide a net environmental benefit to maintain its public purpose standing. Swallow Tail's effort to impose this additional factor to the public purpose analysis falls short. This court can find no authority requiring that a publicly funded project produce a net gain, which in this case would require the environmental benefit of a mitigation project to be discounted by the negative environmental impact of the original project that obtained the 404 permit and purchased the credits. Instead, the appropriate analysis into the public purpose of the Conservation Department's projects is simply determined by examination of that project. *See, e.g., Danforth*, 518 S.W.2d at 74–75 (concluding that the activities of the Environmental Improvement Authority, even if construed as a grant of public funds to a private entity, did not violate section 38(a) because the activities were for the public purpose of improving the environment). In this case, the Conservation Department projects serve a public purpose and are within the Conservation Department mission; the character of the projects is not diminished by the environmental impact of other development projects.

Point denied.

## C. Use of Tax Proceeds under Missouri Constitution, Article IV, Section 43(b)

Swallow Tail argues in its second point on appeal that the trial court misapplied article IV, section 43(b) of the Missouri Constitution, which requires that the Conservation Department use all resources in or generated by the Conservation Commission Fund for bona fide con-

servation purposes. Swallow Tail more specifically alleges that the Conservation Department violates this section by using Conservation Commission Fund resources to generate additional credits for and controlled by the Heritage Foundation. Swallow Tail also argues the credits are a result of the Conservation Department's operations, so any proceeds from their sale should be deposited in the Conservation Commission Fund.

The Conservation Commission Fund consists of moneys collected from a voter-approved tax imposed by article IV, section 43(a) of the Missouri Constitution, the operation and transactions of the Commission and the Conservation Department, and payments to the Commission from the federal government. *Conservation Fed'n of Mo. v. Hanson*, 994 S.W.2d 27, 29 (Mo. banc 1999). The Conservation Commission Fund must be used and expended "for the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto, and for no other purpose." Mo. Const. art. IV, § 43(b).

In this case, Swallow Tail again ignores that these mitigation projects are completed by the Conservation Department primarily with funds granted to it by the Heritage Foundation from the SSTF. Moreover, to the extent that the Conservation Department utilizes any of its own funds on these projects, the projects are within "the specified, permissible conservation purposes" outlined by section 43(b). *Hanson*, 994 S.W.2d at 30. Thus, Swallow Tail's argument that the Conservation Department is violating the mandate of section 43(b) because it is not using its resources for bona fide conservation purposes is fundamentally flawed.

Swallow Tail also argues that any proceeds or monetary benefits derived from the Conservation Department's operations, such as the credits gained from the mitigation projects and the proceeds from their sale, must be deposited into the Conservation Commission Fund, citing that "all fees, moneys or funds arising from the operation and transactions of the conservation commission [and] department of conservation ... shall be expended and used by the conservation commission [and] department of conservation." Mo. Const. art. IV, § 43(b). Swallow Tail's broad interpretation of section 43(b) would require any entity or individual receiving a benefit from the Conservation Department's conservation activities to remit that benefit to the Conservation Commission Fund. We reject such an interpretation, which, as found by the trial court, is without precedent in the almost forty year history of section 43(b). The credits received from the completion of the projects are at most an incidental benefit inuring to the Heritage Foundation, and we do not deem them as resulting from the Conservation Department's operations for section 43(b) purposes.[4]

Point denied.

### III. CONCLUSION

Because any public funds are used by the Conservation Department for the public purpose of environmental conservation and any private benefit to the Heritage Foundation is merely incidental to that

4. It deserves repeating that the Heritage Foundation, as an in-lieu fee program, may only use proceeds from the sale of these additional credits for future mitigation projects, which, as previously stated throughout this opinion, have a primary public purpose.

public purpose, the judgment of the trial court is affirmed.

All concur.

